SULLIVAN *v.* FIDELITY & CASUALTY CO. OF NEW YORK.

1. PRINCIPAL AND SURETY—LIABILITY OF SUBCONTRACTOR'S SURETY
   TO PRINCIPALS FOR LIENS UNDER THEIR CONTRACT.

   The surety on two separate bonds of a subcontractor, given
   to indemnify the principals for any loss accruing to them
   under their contracts, is liable for the amount of a judg-
   ment secured against them jointly on their bonds for labor
   liens by an employee of said subcontractor; no separate
   account of the work done under each subcontract having
   been kept.

2. SAME—ACTION—JOINING SEPARATE CLAIMS—SEPARATE PROOF.

   In an action by one of the principals on his own account
   and as assignee of the claim of the other to recover the
   amount of said judgment, which they had apportioned
   between themselves, from the surety of the subcontractor,
   he had the right, under 3 Comp. Laws 1915, § 12309, to
   join both claims, nor was it necessary for him to make
   proof under each claim as though separate suits had
   been brought.

3. SAME—MISCARRIAGE OF JUSTICE—STATUTE.

   Even if proof of damages in each claim should have been
   made separately, it is not reversible error under 3 Comp.
   Laws 1915, § 13763, since it in no way increased defendant
   surety's liability, and therefore cannot be said to have
   resulted in a miscarriage of justice.

4. SAME—RELEASE OF SURETY—WEIGHT OF EVIDENCE.

   Testimony supporting defendant surety's contention that it
   was released because defendant subcontractor was paid
   more than 80 per cent. on completed work in violation of
   the terms of his contract, *held*, not so conclusive as to
   justify setting aside the verdict of the jury.

Error to Shiawassee; Collins (Joseph H.), J. Sub-
mitted October 30, 1919. (Docket No. 59.) Decided
December 22, 1919. Affirmed on rehearing June 7,
1920. See 210 Mich. 625.

Assumpsit by James Sullivan against the Fidelity

& Casualty Company of New York, surety, and Arthur L. Waldorf, principal, on a bond. Judgment for plaintiff. Defendant surety brings error. Affirmed.

*Cummins & Nichols,* for appellant.

*Pulver & Bush,* for appellee.

SHARPE, J. On February 8, 1917, plaintiff entered into a contract with the Shiawassee county board of road commissioners to construct 3½ miles of gravel road in that county. Under it the contractor agreed to build a gravel road "in strict conformity with the specifications hereto attached and the plans herein referred to, all of which are made a part of this agreement." The specifications provided that the contractor "shall furnish all materials, tools, machinery and labor necessary for * * * finishing the roadway complete in every respect." They also provided that bids for the work must be made on blanks furnished by the board and must be accompanied by a certified check for $100, payable to the board,—

"conditioned that if the contract shall be awarded to the bidder he will when required by said board execute an agreement in writing to perform the work according to the specifications therefor, accompanied by good and sufficient bonds, one guaranteeing the faithful performance of the work in accordance with the terms of the contract, and the other guaranteeing the payment of all indebtedness incurred for labor, materials, or any cause whatsoever on account of this contract. It being expressly understood that the bond given to guarantee the payment of indebtedness is also to include any liability of the said party of the second part arising from the provisions of Act No. 10 of the Public Acts of Michigan, 1912 (Extra Session), as passed, or thereafter amended and occurring through the execution of the work under this contract."

On February 19, 1917, Warren W. Doan entered into

a similar contract with the board for the construction of 3½ miles of road, one mile north of that to be constructed by plaintiff. Both Sullivan and Doan furnished the bonds required by the provision above quoted, one known as the "construction bond," conditioned for the due performance of the contract, and the other known as the "lien bond," conditioned for the payment of all indebtedness which might arise to any subcontractor or laborer or material man in the performance of the work.

Sullivan and Doan, by separate instruments in writing, assigned to the defendant Waldorf their said contracts so far as they related to the graveling of the roads, and Waldorf in such assignments agreed "to give a bond in the sum of $5,000.00 * * * as security to them of the proper performances of the within contract conditions."

The consent of the county board to such assignments was given on May 21, 1917. In pursuance of the assignments, Waldorf furnished to Sullivan and Doan respectively the bonds required thereby, with the defendant surety company as surety. These bonds were similar in form, both being conditioned:

"Whereas, the principal and the obligee have entered into a written contract, hereinafter called the contract, for furnishing and hauling gravel and levelling same on a certain road in the township of New Haven, county of Shiawassee, and State of Michigan, dated the 19th day of February, 1917, a copy of which is attached hereto;

"Now, therefore, the condition of the foregoing obligation is such that if the principal shall indemnify the obligee for all loss that the obligee may sustain by reason of the principal's failure to comply with any of the terms of the contract, then this obligation shall be void; otherwise it shall remain in force."

It appears that Waldorf hired one William C. Saeman to haul gravel for him and that the work he thus

did was not kept separate so far as the two jobs were concerned. On Waldorf's failure to pay for this work, Saeman sued him and made both Sullivan and Doan and the sureties in their lien bonds parties. Waldorf was not served, and the others did not defend. The defendant surety company was notified of the pendency of this suit by both Sullivan and Doan and requested to defend the same and thereby save them harmless on their bonds. Mr. Ruttle, a representative of the defendant company, came to Corunna and looked the matter up. He talked with both Sullivan and Doan about it, but declined to defend the suit. A judgment on default was rendered against all of the defendants for $737.14 and costs.

Sullivan and Doan estimated their several liability on such judgment, Sullivan assuming $271 and Doan $466.14, and paid the same. Doan then assigned to Sullivan all right of action he might have, by reason of such payment, on the bond given by Waldorf to him and in which the defendant company was his surety, and Sullivan brought this suit against Waldorf and the surety company to recover the amount of the Saeman claim. Waldorf was not served. The declaration counts on the contract and bonds separately and as to the Doan claim alleges an assignment of his right of action to Sullivan. The plaintiff had verdict and judgment, and the defendant surety company appeals.

1. Do the bonds given by the defendant company as surety for Waldorf cover labor claims? The rights and liabilities of Waldorf accrued under the assignments made to him by Sullivan and Doan. These were annexed to the contracts made with the county board which, including the specifications annexed thereto and forming a part thereof, thus became a part of Waldorf's contract, and he became chargeable with the performance of every obligation assumed by Sullivan

and Doan thereunder, relative to the graveling of the roads. Waldorf thus had notice that the lien bonds had been given and that Sullivan and Doan were liable thereunder to pay for all labor performed whether hired by them or by himself. The bonds sued on were given to indemnify the obligees for all losses sustained by reason of Waldorf's failure to comply with any of the terms of his contract. As before stated, his obligation under his assignment must be held to include every obligation of Sullivan and Doan under their respective contracts. There seems no escape from the conclusion that as the obligees in the respective bonds suffered loss by reason of their liability to Saeman for the work done by him, the principal and surety must, under the conditions of the bonds, indemnify them for such loss.

2. There would seem to be no question but that plaintiff might join his right of action on the bond given him by Waldorf with that accruing to him under the assignment from Doan. Such right of action is clearly provided for in the judicature act of 1915, 3 Comp. Laws 1915, § 12309, and was doubtless permissible before that act was passed. *Randall* v. *Wayne Circuit Judge*, 96 Mich. 284. Defendant's counsel apparently so concedes, but he insists that, when so joined, the right to recover under each must have been as clearly proven as though separate suits had been brought therefor. There was proof offered which showed a liability under each bond. It is undisputed that a part of the gravel hauled by Saeman was put on the road which Sullivan was under contract to build and a part on that which Doan had contracted for. The amount due Saeman, and for which he recovered judgment, was not in dispute. There was evidence from which the jury could have determined this amount independent of the judgment. Had separate suits been brought, plaintiff would have been re-

quired to prove the amount due Saeman from Waldorf on the respective jobs. Waldorf owed the amount for which judgment was recovered in this case to Saeman, and the plaintiff and Doan under their bonds were liable to Saeman therefor. The defendant company in its undertakings agreed in effect to make good the default of Waldorf in failing to make payment thereof. The fact that the damages on account of Waldorf's default were not proven in separate items has in no way increased its liability.

If it be conceded that the admission of evidence of the damage sustained in a lump sum was error, how can it be said that it affirmatively appears that such error has resulted in a miscarriage of justice? This we must say in order to reverse the judgment rendered, under the provisions of the judicature act of 1915, 3 Comp. Laws 1915, § 13763.

3. It is claimed that Waldorf was overpaid on his contracts in violation of their terms and of the conditions in the bonds and that the surety is thereby released. The contracts made by Sullivan and Doan respectively provide that payment should be made every two weeks on estimates of the engineer when approved by the board and that 20 per cent. should be retained until the work was fully completed and accepted by the state highway commissioner. In defendant's bonds the obligees agreed to "retain such proportion as the contract specifies * * * but not less in any event than ten per cent.," until the contract was fully completed. The work was being performed by Waldorf under his assignments from Sullivan and Doan, assented to by the county board. He thus assumed their duties and liabilities and, in effect, became a party to the original contracts. The amounts he should be paid under the estimates was a matter between him and the county board. Mr. Bailey, the chairman of the board, and who, it appears, was also

acting as engineer, testified that he made written estimates but was unable to produce them.   He further said:

"I did not at any time, according to these estimates, pay this man Waldorf more than eighty per cent. of the amount of any of the written estimates that I made."

He testified at considerable length as to the manner in which the estimates were made and the allowance for work done in uncovering the gravel in the pit.   He also stated that Mr. Ruttle, a representative of the defendant company, was there several times examining the papers on file and "he claimed we were not paying Mr. Waldorf enough on our estimates, so he could pay his help."

Defendant's counsel submits a computation of the gravel put on by Waldorf on the respective jobs from estimates afterwards found by Bailey and by comparison with the amount paid him claims an overpayment after making the deduction provided for in the contract.   Some of the estimates on which he relies were made the following spring and after the road had been used during the winter.

In view of the positive testimony of Mr. Bailey and the fact that, as stated by him, an allowance was made for uncovering the gravel in the pit, we do not feel so convinced of the correctness of counsel's conclusions as to justify us in setting aside the verdict of the jury on this question.   The court instructed them:

"I charge you that if you should find that Arthur L. Waldorf received from the board of road commissioners more than 80% of the value of the completed work and materials furnished in place as the work progressed as estimated by the officer or engineer in charge, then and in such case your verdict would be no cause of action as to the Fidelity and Casualty Company of New York."

We are asked to strike from the files defendant's brief wherein counsel criticise the conduct of plaintiff's attorneys, charging that they advised Sullivan and Doan about their defending the Saeman suit. In the rural parts of the State, local attorneys are usually well known and it is not infrequent for parties when sued to call on and talk with the attorney for the plaintiff about the suit brought. This is apparently what happened, and of itself does not warrant a charge of unprofessional conduct against such attorneys. We have examined the record with care, and feel constrained to say that we find the criticism uncalled for.

The judgment is affirmed

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.