PATRICK *v.* CARRIER-STEVENS COMPANY.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—ABANDONMENT.
   A question that was raised by appellant but abandoned is not considered by the Supreme Court.

2. TRIAL—OVERRULING OBJECTIONS—REMARKS OF COURT.
   Remarks of trial judge in overruling a defense objection, although somewhat irregular and perhaps in dubious taste *held*, under transcript presented, not to have constituted prejudicial error that deprived defendants of a fair trial.

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 774 *et seq.*
[2] 3 Am Jur, Appeal and Error § 1053; 53 Am Jur, Trial § 79.
[3] 17A Am Jur, Drugs and Druggists § 36 *et seq.*
[4] 17A Am Jur, Drugs and Druggists §§ 7, 51.
[6] 17A Am Jur, Drugs and Druggists § 38.

3. Poisons—Rotenone—Pleading—Pretrial Statement—Opening Statement.

Plaintiff's declaration, pretrial statement and opening statement in action to recover for loss of mink kittens after dusting nests with rotenone powder purchased from defendants and which had been taken from a bulk container and put into a labeled bag, *held*, not to have limited the negligence issue in the matter of handling such article to the standard care set up by economic poison act, where the declaration makes a clear reference to an alleged breach of defendants' common-law duty and such position was not abandoned (PA 1949, No 297).

4. Same—Flea Repellent—Economic Poisons—Drugs—Statutes.

It is incumbent upon party who sells an article for the purpose of repelling fleas among animals, such as minks, and who disclaims liability for negligence in sale of an economic poison and also as druggist in the sale of pharmaceuticals, to show that the article sold, rotenone powder, was excluded from coverage by the pharmaceutical act (CL 1948 and CLS 1952, § 338.401 *et seq.*).

5. Same—Rotenone—Instructions—Statutes—Druggists.

Instruction in purchaser's action against seller of rotenone powder that jury must first determine whether or not such powder was an economic poison, that if it were, then the jury must apply the standard of care set out by the economic poison act, together with instruction as to ordinary care and standard of care required of druggists in dispensing dangerous drugs *held*, proper in mink farm operator's action for loss of mink kittens after nests were dusted with powder purchased from defendants (PA 1949, No 297).

6. Same—Rotenone—Drugs.

Defendants who repackaged rotenone powder upon sale of 5 pounds to plaintiff mink farm operator in an arguably negligent manner must assume the responsibility of their assumed position as druggists and handle the substance accordingly.

7. Same—Instructions—Negligence—Breach of Warranty.

Instructions to jury in action for breach of warranty in the sale of rotenone powder as a flea repellent for plaintiff's minks, which included both of defendants' requests on the subject almost verbatim and which were fair and adequate to the cause on that count as well as count based on defendants' alleged negligence *held*, to have met the necessary test.

Appeal from Clinton; Cash (Paul R.), J. Submitted June 2, 1959. (Docket No. 1, Calendar No. 47,638.) Decided November 25, 1959. Rehearing denied January 4, 1960.

Case by Joseph Patrick against Carrier-Stevens Company, a Michigan corporation, Victor E. Stevens, John A. Martin and L. H. Hull, doing business as Hunt Drug Company, for damages arising from death of litters of new-born mink caused by insecticide. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Alfred J. Fortino* and *Leo W. Corkin,* for plaintiff.

*Barnard Pierce* (*Richard B. Foster* and *Edmund E. Shepherd,* of counsel), for defendants.

VOELKER, J. In July or August of 1953 plaintiff, Joseph Patrick, purchased 5 pounds of rotenone from defendant Victor E. Stevens in the Hunt Drug Store, which store was owned by the various defendants. The following April plaintiff used the rotenone to dust the nests of all of his mink except 2. The mink were about to whelp and he wanted to protect the new-born kittens from fleas. Shortly after the kittens were born most of them became sick and died. In the 10 days or 2 weeks after the nests were dusted between 1,100 and 1,200 young mink died. None of the mink in the 2 undusted nests died.

Allegedly when plaintiff bought the rotenone powder, defendant Stevens warranted it in that he assured plaintiff that it was a good flea repellant and that it would not hurt mink, even if they ate it. The plaintiff received the rotenone powder he purchased in a brown paper bag with a white label attached upon which defendant Stevens had typed the word "rotenone." Defendant Stevens had taken the pow-

der from a bulk container and put it into the labeled bag.

Plaintiff brought his case below based upon 2 counts, the first sounding in negligence and the second based upon warranty. The cause was tried to a jury which returned a verdict for plaintiff in the amount of $50,000, upon which the court entered judgment. From that verdict and judgment defendants appeal, setting out 3 questions. The first question was subsequently abandoned and accordingly will not here be considered.

Appellants' second question on appeal is:

"(a) Were remarks of the trial judge directed to counsel for defendants, both in open court and in chambers, so prejudicial as to call for reversal, and (b) should the court have granted the motion for mistrial or the motion for new trial?"

We have carefully studied the entire trial transcript with particular attention to the remarks pointed out in appellants' brief. The remarks complained of had generally to do with the court's sharpness of language in overruling a defense objection. The test to determine error in this respect is not whether there occurred certain unfortunate incidents during the trial. Few trials are without such instances. Our job is to determine whether or not the parties had a fair trial. We cannot screen every word dropped by the harried trial judge; for in spite of his robe and respectability, he is still a human being, subject to the usual human frailties, including sometimes an unintended expression of emotion. Thus, so long as we continue to have men on our benches, and not computing machines, we must overlook occasional remarks such as the ones expressed here, else the wheels of justice would grind to a permanent halt.

We therefore think the several remarks complained of, although they may have been somewhat irregular and perhaps in dubious taste, did not constitute prejudicial error. From the entire transcript it appears that all parties had both a long trial and a fair one.

Appellants' third question on appeal is:

"Considered as a whole, was the court's charge to the jury prejudicial to defendants, and, specifically, did the court err in the following respects:

"A. Since the declaration, the pretrial stipulation, and the opening statement of counsel for plaintiff, clearly indicate that count 1 of plaintiff's declaration predicated the charge of negligence solely upon alleged noncompliance with PA 1949, No 297 (CLS 1956, § 286.161 *et seq.* [Stat Ann 1958 Rev § 12.352 (1) *et seq.*]), regulating the sale of insecticides, did the court commit prejudicial error by instructing the jury that the duty owed by defendants to plaintiff was to be measured by those of a druggist in dispensing medicines, drugs and poisons, plus the common-law duty of ordinary care?

"B. Did the court err in instructing the jury on the law of warranty of fitness to the prejudice of defendants?"

In essence the court instructed the jury that they must first determine whether or not the rotenone powder was an economic poison, as defined under the cited statute. He told the jury that if they found such to be the case then they must apply the standard of care set out by that statute, which he proceeded to explain. He also instructed the jury as to ordinary care and as to the standard of care required of druggists in dispensing dangerous drugs, thus covering the other fields of law that might possibly apply, depending upon the jury's determination of the disputed facts on the first question.

Appellants now claim that plaintiff's pleadings, the pretrial statement, and the opening statement served to limit the negligence issue to the standard of care set up by the cited economic poison act. With this position we do not agree. The declaration makes a clear reference to an alleged breach of defendants' common-law duty and we find nothing in the pretrial statement or plaintiff's opening statement which abandons that position.

Appellants claim further that the court committed prejudicial error when it instructed the jury regarding the standard of care imposed upon druggists when dispensing dangerous drugs and poisons. The basis for this claim seems to be that rotenone is not a drug, medicine or poison as those terms are defined by the Michigan pharmaceutical act* and therefore it can be sold in any feed store or supermarket in Michigan. To support this position we are cited to *Wrigley's Stores, Inc.,* v. *Board of Pharmacy,* 336 Mich 583. That decision is rather persuasive but not conclusive support for appellants' position. Appellants have cited us to no evidence to support their claim that this powder could have been sold in supermarkets, and even if evidence had been submitted regarding the nature of the powder, it still would have been a jury question as to whether or not under the circumstances it should be excluded from the cited pharmaceutical act. In such a situation the instructions still would not have been erroneous, because, had the jury found this powder not to be within the scope of the act, they would still have needed the instructions they got in order intelligently to reach that decision.

The *Wrigley Case* held that such drugs could be sold only in their original package. Such was not the case here. The defendants repackaged the pow-

---

* CL 1948 and CLS 1952, § 338.401 *et seq.* (Stat Ann and Stat Ann 1951 Cum Supp § 14.721 *et seq.*).

der, and did so in an arguably negligent manner. Although it is not spelled out in the *Wrigley Case,* the manifest rationale behind limiting grocers and other nondruggists to the sale of the excluded drugs, medicines and poisons in their original packages is to protect the public. This is so because grocers and others similarly situated who are not trained in the apothecary trade are not held to the same standard of care as that imposed upon druggists, and they are accordingly limited in their sales activities. In this way the public can be assured that "drugs" will be properly labeled and that antidotes, warnings and other safety measures will be clearly printed on the package. Thus when defendants repackaged the rotenone they were manifestly acting as druggists, not as grocers or otherwise, and the responsibilities of their assumed position must accompany their actions.

The latter part of appellants' third question refers to the instructions regarding warranty. In essence it is claimed that these instructions were inadequate, misleading, confusing and erroneous. In this regard we note that defendants requested only 2 instructions on warranty, both of which were given almost verbatim. But we do not rest our decision there. We have read the instructions in their entirety and find that they are fair and adequate to the cause as to both counts. That is the only test they need meet, and on appeal we will not seek to impose a greater or more stringent test. See, generally, *Huffman* v. *First Baptist Church of Flushing,* 355 Mich 437.

Judgment affirmed, costs to appellee.

CARR, KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.

DETHMERS, C. J., did not sit.