DOYLE VACUUM CLEANER COMPANY v F. J. SILLER &
COMPANY

1. EVIDENCE—REBUTTAL—SCOPE.

A plaintiff's rebuttal evidence is limited to testimony which tends
to contradict evidence already introduced by the defendant, and
evidence which tended to substantiate a plaintiff's case was
properly excluded on rebuttal.

2. EVIDENCE—REBUTTAL—ADMISSIBILITY—JUDICIAL DISCRETION.

The admission of rebuttal evidence rests in the sound discretion
of the court.

3. TRIAL—COMMENTS BY COURT—PREJUDICE—FAIR TRIAL—APPEAL
AND ERROR.

Comments made by the trial judge, asserted to have been prejudi-
cial, do not warrant reversal and a new trial where a review of
the record as a whole leads to a finding that the appellant had
a fair trial.

4. DAMAGES—INSTRUCTIONS TO JURY—THIRD PARTY ACTS—HARMLESS
ERROR.

Failure to give a requested instruction as to the intervening acts
of third parties in a case where a plaintiff's building was
alleged to have been damaged by defendants while installing a
sewer and may have been further damaged during the course
of repair, was at the most harmless error where the jury
reached a verdict of no cause of action, thus finding no liability
and not reaching the question of damages, and the verdict
would not have been different had the instruction been given,
and where the instructions given adequately informed the jury
of the issues, the parties' positions, and the applicable law.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 53 Am Jur, Trial §§ 115, 116.
   29 Am Jur 2d, Evidence §§ 250, 269.
[3] 53 Am Jur, Trial § 540.
[4] 53 Am Jur, Trial § 508 *et seq.*
[5, 6] 22 Am Jur 2d, Damages § 172 *et seq.*
[7] 58 Am Jur 2d, New Trial §§ 212, 213.
[8] 53 Am Jur, Trial § 181.

5. DAMAGES—LOSS OF PROFITS—REASONABLE CERTAINTY.

Damages for loss of profits may be recovered when those damages are proved with a reasonable degree of certainty.

6. DAMAGES—SPECULATIVE DAMAGES—LOSS OF PROFITS.

Claimed damages for loss of profits were too speculative where the products for which the lost profits were alleged were not in production, nor had any been marketed at the time a plaintiff's factory was damaged.

7. NEW TRIAL—JUDICIAL DISCRETION.

The grant or denial of a new trial lies within the discretion of the trial judge.

8. APPEAL AND ERROR—VERDICT—WEIGHT OF EVIDENCE—JURY QUESTION.

The test for granting appellate relief because a jury verdict is contrary to law and against the great weight of the evidence is that the verdict is against the overwhelming weight of the evidence, and this test was not met where the record shows that, at most, the evidence presented was a question of fact for the jury to decide.

Appeal from Kent, John H. Vander Wal, J. Submitted Division 3 June 4, 1974, at Grand Rapids. (Docket No. 17075.) Decided September 25, 1974. Leave to appeal denied, 393 Mich —.

Complaint by Doyle Vacuum Cleaner Company against F. J. Siller & Company and the City of Grand Rapids for negligence. Judgment for defendants. Plaintiff appeals. Affirmed.

*Warner, Norcross & Judd* (by *Harold S. Sawyer* and *Robert H. Skilton),* for plaintiff.

*Allaben, Massie, Vander Weyden & Timmer,* for defendant F. J. Siller & Company.

*George A. Weible,* City Attorney, and *G. Douglas Walton,* Deputy City Attorney, for defendant City of Grand Rapids.

Before: HOLBROOK, P. J., and T. M. BURNS and R. L. SMITH,* JJ.

HOLBROOK, P. J. Plaintiff, Doyle Vacuum Cleaner Company, brought an action against defendants herein claiming that they were responsible for damage to plaintiff's building. In December 1972 a ten-day jury trial was had. The jury returned a verdict of no cause of action in favor of defendants. Thereafter, plaintiff moved for a new trial claiming errors had occurred in the instructions, the disallowance of certain rebuttal testimony, and by comments of the trial court which were prejudicial to plaintiff, and that the verdict was contrary to the great weight of the evidence. By written opinion, the trial court denied plaintiff's motion.

In late 1967 or early 1968, defendant City of Grand Rapids determined a need for a sanitary relief sewer to run in Stevens Street from Ionia Avenue to the west. Plans for such sewer were prepared by the city and, pursuant to requirements of the Grand Rapids City Charter and City Code, the bid was let to the lowest (and only) bidder. In April 1968 a contract was made between defendant city and defendant F. J. Siller to construct the sewer line.

The route of the sewer line was along the north side of Stevens Street, within a few feet of the south wall of plaintiff's building. Plaintiff is in the business of manufacturing commercial and industrial vacuum cleaners. Its factory building is approximately 262 feet in length and occupies a substantial portion of the block along Stevens Street between Wallen Avenue and Phillips Avenue. The building is one structure; however, it is

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

made of separate structures built at different times.

In the original plans, it was designated by the city that the contractor should use the "tight sheeting" method in supporting walls of the trench to be dug. The sewer pipe itself was some 36 inches in width. In order to lay that pipe, the contractor dug trenches approximately 5 feet in width and 14 feet in depth. For various reasons, the method of digging a trench was temporarily abandoned in favor of a tunneling method. The tunneling method proved inadequate and the sewer line was finished by use of the trench and tight sheeting method.

It appears that as the construction of the sewer line approached the southwestern portion of the Doyle building, Mr. Dewey I. Doyle, Sr., chief executive of the corporation, became concerned as to whether the construction would cause damage to the building and contacted a Grand Rapids engineering firm for advice. Prior to the time that the trench passed adjacent to plaintiff's building and during that time, elevations were taken by the engineering firm. The firm advised the use of steel sheeting rather than wooden planks in support of the walls of the trench. In the alternative, they proposed the use of the soil stabilization method, which is the injection of certain chemicals into the soil which cause soil particles to bind together.

By complaint, filed January 27, 1971, plaintiff alleged that defendant had been negligent in the construction of the sewer line and that as a result thereof plaintiff's building had subsided, cracked, settled, and sustained permanent structural damage. Damages claimed in the complaint were for repair and rebuilding of a wall, the loss of employee efficiency, cost of time of executive manage-

ment and supervisory personnel, loss in value of plaintiff's building, and curtailment of manufacturing operations. By amended complaint, filed in May 1972, plaintiff asserted that it was a third-party beneficiary under the contract entered into between the defendant city and the defendant Siller. This was based upon provisions in the contract that the contractor should: safely guard adjacent property from damage; replace or make good any damage, loss or injury; take precaution against injuries to persons or damaged property; and restore, at its own expense, any public or private property damaged or injured as a result of any act or omission on its part, its employees or agents. Plaintiff alleged breach of these provisions.

Plaintiff has appealed and set out a number of issues, which we consider in the following sequence.

## I

Plaintiff asserts that the trial court committed reversible error by excluding certain evidence which plaintiff sought to introduce in rebuttal.

Mr. Rupert McGinn was an assistant city engineer involved with the construction which led to this law suit. Plaintiff has asserted that during the two-and-a-half-week trial, Mr. McGinn was with counsel for the city and was acting in an advisory capacity and that, as a function thereof, plaintiff's counsel assumed that he was to testify during the city's case in chief. When he did not, plaintiff called Mr. McGinn as a rebuttal witness. The court, over strenuous objection of both defendants, allowed this, but limited the rebuttal to testimony which tended to contradict evidence already introduced by the defense, rather than testimony which would merely confirm or corroborate evidence of-

fered by plaintiff in its case in chief. Plaintiff
asserts that reversible error was committed when
plaintiff was prohibited from introducing evidence
which it says would have tended to contradict
evidence of the defendants. Plaintiff says that
certain testimony of Mr. McGinn would have con-
tradicted testimony by Mr. F. J. Siller as to the
length of tunneling. Apparently dissatisfied with
the elicited testimony of Mr. McGinn, plaintiff
attempted to introduce a city record which in-
cluded information as to time consumed in the
project and total figures of the footage which had
been completed. Plaintiff asserted that this record
would have shown the length of pipe that had
been tunneled and contradict the testimony of Mr.
Siller. The court excluded this record as being
improper rebuttal.

Plaintiff had originally introduced evidence of
the tunneling operation in its case in chief. Cer-
tainly, plaintiff had the opportunity to submit the
business record at that time. Thus, it is readily
apparent that the attempted admission of this
record in rebuttal was improper in that it tended
to substantiate plaintiff's case. See McCormick,
Evidence (2d ed), § 4, p 6.

The second ruling of which plaintiff complains is
the disallowance of certain testimony of Mr. Mc-
Ginn as to a conversation had with members of
the Doyle family. Presumably, the probity of this
conversation would have related to knowledge by
defendant city of its duty towards plaintiff and as
a preliminary fact in the proof of negligence.
Plaintiff says the testimony would have contra-
dicted the city's testimony that the plans were
adequate. The following colloquy occurred:

   "*Q. [Mr. Skilton, plaintiff's attorney]:* In fact, didn't

you tell the Doyles you were going to find a construction method that would be safe for the building?

"*A. [Mr. McGinn]:* The method that we were using was a suitable method to protect the building, right from the beginning as it was stipulated in the contract.

"*Q.* Did you tell the Doyles that you were concerned with preventing damage to the building?

"*A.* Again, we wanted to make sure that no damage was done to public or private property.

"*Q.* Did you tell the Doyles that?

"*A.* Yes.

"*Q.* Did you tell them you would find a method of construction that would insure it wouldn't cause damage to the building?

"*Mr. Massie [defense attorney]:* I am going to object to this. This is repetitious. He has already testified to the conversations."

In *Arnold v Ellis,* 5 Mich App 101, 114; 145 NW2d 822, 829 (1966), it was held that the admission of rebuttal evidence rests in the sound discretion of the court. See also *Barrows v Grand Rapids Real Estate Board,* 51 Mich App 75, 97, 214 NW2d 532, 543–544 (1974), and cases cited therein. The record discloses that the trial court actually showed liberality in allowing the proffered testimony. No abuse of discretion is present.

## II

Plaintiff asserts that the trial court made two improper comments which greatly prejudiced its case.

Plaintiff sought the introduction of certain notes made by Mr. McGinn. These notes were made during the course of construction of the sewer and related to the propriety of the use of the chemical stabilization method. The court said: "Let it go in. It won't make any difference anyway. I have ruled

he can read it." Some moments later, the trial court said: "This isn't rebuttal. This is rebuttal to Mr. Doyle, part of the plaintiff's case. I will sustain the objection." Plaintiff asserts that this latter statement was unnecessary and erroneous.

A fair reading of this transcript, which runs some 1,008 pages, reveals that these two statements taken out of context given an unwarranted implication of prejudice to plaintiff.

As to this assertion of error, the Supreme Court has said:

"The test to determine error in this respect is not whether there occurred certain unfortunate incidents during the trial. Few trials are without such instances. Our job is to determine whether or not the parties had a fair trial. We cannot screen every word dropped by the harried trial judge; for in spite of his robe and respectability, he is still a human being, subject to the usual human frailties, including sometimes an unintended expression of emotion. Thus, so long as we continue to have men on our benches, and not computing machines, we must overlook occasional remarks such as the ones expressed here, else the wheels of justice would grind to a permanent halt." *Patrick v Carrier-Stevens Co,* 358 Mich 94, 97; 99 NW2d 518, 520 (1959).

We find that plaintiff had a fair trial; that in viewing the entire trial, the comments were not so prejudicial as to warrant reversal and a new trial.

## III

Next, plaintiff asserts that reversible error was committed when the trial court failed to give plaintiff's requested instruction on intervening negligence of the third parties.

After construction of the sewer was completed

by defendant Siller, plaintiff hired a Grand Rapids construction firm to repair its building. In coordination with the work of the construction company, the previously retained engineering firm assisted in the repair work. During the course of this repair, certain "bow-string trusses" were cracked. These trusses were the supporting structure of the roof of that certain portion of plaintiff's building which was being repaired. In its brief, plaintiff has said that it is evident that the jury must have by necessity found, before returning the verdict of no cause of action, that the cracking of the bow-string trusses was the sole responsibility of the plaintiff because of the negligence of the engineering firm and the construction company.

As the actions of the third parties did not occur until after the work of the defendant Siller had been completed, we find it difficult to understand how the intervening acts of these third parties could properly relate to the question of causation and liability. Evidence was presented at trial of damage precedent thereto and the cause of action per se was based upon actions of the defendants prior to any possible negligence of third parties. While the third-party actions could have conceivably exacerbated the damage, such actions do not properly relate to the primary issue of causation. A proper instruction proffered to the court as to the intervening acts of third parties on the issue of damages, under this record, would seem to have been merited. However, as the jury reached a verdict of no cause of action, it is apparent that they found no liability, not reaching the question of damages. As such, the failure to give an instruction on the intervening acts of third parties, at most, was harmless error as the verdict would not have been different had the instruction been given. *Cf. Knoper v Burton,* 383 Mich 62; 173 NW2d 202

(1970). Moreover, we must view the instructions as a whole. *Reynolds v Majewski,* 351 Mich 492; 88 NW2d 405 (1958); *Cooper v Tranter Mfg, Inc,* 4 Mich App 71; 143 NW2d 772 (1966). The instructions in the instant case adequately informed the jury of the issues, the parties' respective positions, and the applicable law.

IV

Plaintiff asserts that the trial court erred in denying admission of testimony as to loss of future profits.

Plaintiff presented testimony as to three new vacuum cleaner models whose introduction was allegedly delayed because of the damage to the building. Plaintiff thereafter attempted to give testimony of an accountant as to the amount of damages suffered because of the inability to introduce the new models. The trial court refused to allow evidence of damages for loss of profits resulting from lost sales of the new models as being too speculative.

"There may be a recovery for loss of profits shown to be the natural and probable consequence of the act or omission complained of, provided the amount thereof is shown with sufficient certainty." 25 CJS, Damages, § 41, p 734. Michigan follows what has been described as the "reasonable certainty" test, *i.e.,* damages for loss of profits may be recovered where those damages are proved with a reasonable degree of certainty. See *Valley Die Cast Corp v A C W, Inc,* 25 Mich App 321, 334–336; 181 NW2d 303, 310 (1970), and *H M Seldon Co v Carson,* 29 Mich App 643, 649; 185 NW2d 842, 845 (1971).

The products for which loss of profits were al-

leged were not in production, nor had any been
marketed. The resulting claimed damage was spec-
ulative. *Cf. Fera v Village Plaza, Inc,* 52 Mich App
532; 218 NW2d 155 (1974).

V

Lastly, plaintiff asserts that the jury verdict was
contrary to the great weight of evidence, and,
effectively, the trial court's denial of plaintiff's
motion for a new trial was erroneous.

The grant or denial of a new trial lies within the
discretion of the trial judge. *Termaat v Bohn
Aluminum & Brass Co,* 362 Mich 598, 602; 107
NW2d 783, 785 (1961); *Carpenter v Cleveland,* 32
Mich App 213, 215; 188 NW2d 248, 250 (1971).

"The test for granting appellate relief because a jury
verdict is contrary to law and against the great weight
of the evidence is that the verdict is against the over-
whelming weight of the evidence. *Lake Oakland
Heights Park Association v Township of Waterford,* 6
Mich App 29; 148 NW2d 248 (1967). The record before
us fails to meet that test." *Newton v Huddle,* 22 Mich
App 314, 316; 177 NW2d 222, 224 (1970).

Likewise, the record before us does not meet the
test.

The greater portion of plaintiff's presentation
revolved around proof of damages. Proof of causa-
tion and liability, to no small extent, was based
upon the evidence of the engineering firm's eleva-
tions. Much of this evidence was put into question
as to its reliability by defendants in that it showed
that certain errors had been made in the process
of taking elevations and that a number of changes
had been made by the engineering firm at its
offices at a later time. By implication, it was also
shown that the engineering firm had a possible

interest in the case in that there was an assertion of negligence against it for its part in the repair of the building. Further, defendants introduced evidence of an earthquake tremor which occurred during the period of construction. Defendants introduced testimony as to the number of large punch presses owned and operated by the plaintiff. There was also evidence which indicated the settlement occurred and existed before the construction began and that the weight of the building itself could have caused the settlement. Expert testimony, introduced by defendants, stated that the method chosen was commonly accepted and proper, and that the use of steel sheeting, as proposed by plaintiff, would certainly have caused damage due to the greater force necessary to be used with vibrations resulting. There was also testimony showing that the contractor had used soil stabilization near or under a portion of the building but was not allowed by the plaintiff to do so where the damaged portion was located.

Without further discussion of the extensive proofs, we conclude that the record shows that, at most, the evidence presented was a question of fact for the jury to decide. Under these facts, we cannot say that the verdict was against the overwhelming weight of the evidence nor, consequently, that the trial court's denial of the motion for a new trial was erroneous.

Affirmed. Costs to defendants.

All concurred.