FIREMAN'S FUND AMERICAN INSURANCE COMPANIES v
GENERAL ELECTRIC COMPANY

1. CONTRACTS—INTERPRETATION—INDEMNITY—INTENT.
   The general rule in the interpretation of all contracts, including
   indemnity contracts, is to ascertain the intention of the parties.

2. INDEMNITY—CONTRACTS—CONSTRUCTION OF CONTRACTS—NEGLI-
   GENCE—INTENTION OF PARTIES.
   A contract of indemnity will not be construed to indemnify the
   indemnitee against losses resulting to him through his own
   negligent acts, where such intention is not expressed in une-
   quivocal terms.

3. INDEMNITY—CONTRACTS—ONE'S OWN NEGLIGENCE—STRICT CON-
   STRUCTION—INTENT.
   A contract of indemnity which purportedly indemnifies against
   the consequences of one's own negligence is subject to strict
   construction and will not be construed to indemnify unless it
   clearly appears from the language used that it was intended to
   have that effect.

4. INDEMNITY—CONTRACTS—CONSTRUCTION—DRAFTER—INDEMNITEE.
   Indemnity clauses are construed most strictly against the party
   who drafts them and the party who is indemnitee.

5. INDEMNITY—CONTRACTS—INDEMNITOR'S OBLIGATION—EXTRAORDI-
   NARY LIABILITY—INTENT—LANGUAGE.
   Generally, indemnity provisions in a contract must clearly de-
   scribe the indemnitor's obligation to indemnify the indemnitee

REFERENCES FOR POINTS IN HEADNOTES
[1–4, 6] 41 Am Jur 2d, Indemnity § 13.
[2, 3] 41 Am Jur 2d, Indemnity §§ 9, 15–18.
   Validity of contractual provision by one other than carrier or
   employer for exemption from liability, or indemnification, for
   consequences of own negligence. 175 ALR 8.
[5] 41 Am Jur 2d, Indemnity §§ 1, 2.
[7–9] 29 Am Jur 2d, Evidence § 269.
[9] 29 Am Jur 2d, Evidence §§ 251, 253.
[10] 29 Am Jur 2d, Evidence § 824.
[11] 20 Am Jur 2d, Costs § 65.

to impose this extraordinary liability on an indemnitor; this obligation cannot come from reading into the general words used the fullest meaning which lexicography would permit.

6. INDEMNITY—CONTRACTS—CIRCUMSTANCES—INTENT.

The intention of the parties in a contract of indemnity must be read in the light of the surrounding circumstances under which the contract was made.

7. EVIDENCE—REBUTTAL EVIDENCE—SCOPE—JUDICIAL DISCRETION.

The scope of rebuttal evidence in civil cases is within the sound discretion of the trial judge.

8. EVIDENCE—REBUTTAL EVIDENCE—CASE IN CHIEF—JUDICIAL DISCRETION.

A trial judge does not abuse his discretion by rejecting rebuttal evidence where the line of demarcation between rebuttal evidence and that which should properly be given in the case in chief is more or less obscure.

9. EVIDENCE—ADMISSIBILITY—PROBATIVE VALUE—PREJUDICIAL EFFECT.

A trial judge may reject proffered evidence where, in his opinion, the probative value of the evidence is outweighed by its prejudicial effect.

10. EVIDENCE—ADMISSIBILITY—TESTS—SIMILAR SITUATIONS AND CIRCUMSTANCES.

The existence or occurrence of a particular fact, condition, or event, may be proved by evidence as to the existence or occurrence of similar facts, conditions, or events, under the same, or substantially similar, circumstances but, where the test situations were dissimilar and circumstances not the same, such evidence should be inadmissible.

11. COSTS—EXPERT WITNESS FEES—PREPARATION FEES—JUDICIAL DISCRETION.

The trial court is empowered, in its discretion, to authorize expert witness fees, including preparation fees (MCLA 600.2164; MSA 27A.2164).

Appeal from Wayne, James N. Canham, J. Submitted November 3, 1976, at Detroit. (Docket No. 25011.) Decided March 28, 1977.

Complaint by Fireman's Fund American Insur-

ance Companies against General Electric Company, Graybar Electrical Company and Environmental Designs Associates, Inc., seeking indemnity or contribution for a settlement for damages paid by plaintiff to an employee of defendant Environmental who was injured while using equipment manufactured by General Electric and distributed by Graybar. Directed verdict for Environmental. Jury verdicts for General Electric and Graybar. Plaintiff appeals. Affirmed.

*Martin, Bohall, Joselyn, Halsey, Rowe & Jamieson, P. C.,* for plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P. C.,* for Environmental Designs Associates, Inc.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P. C.,* for General Electric Company and Graybar Electrical Company.

Before: BASHARA, P. J., and D. E. HOLBROOK and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. A Wayne County Circuit Court jury denied plaintiff recovery against defendants General Electric Co. (GE) and Graybar Electric Co. (Graybar) in this action for indemnity or contribution. Prior to the case being submitted to the jury, at the close of plaintiff's proofs, defendant Environmental Designs Associates (Environmental) was granted a directed verdict by the trial judge. This appeal is taken from these adverse determinations.

While the record is vast, only certain facts, correctly set forth in plaintiff's brief, are necessary to understand the posture of this case on appeal. In September, 1971, one Anthony Rich and two co-

employees were employed by Environmental, which had been engaged to paint a mural on the First National Building in Detroit. For this purpose, Environmental rented a powered scaffolding device to be used on the exterior of the building so that men and equipment could be raised or lowered to various desired positions. The staging device was designed and manufactured by Spider Staging Inc., and rented to Environmental by Spider Staging Sales Co.

Without unnecessary details, an accident occurred during the operation of this equipment which caused severe personal injuries to Rich. As a result of the accident and the serious injuries which ensued, Rich sued Spider Staging Inc., Spider Staging Sales and Richard Crudele, Spider's sales representative who negotiated the lease with Environmental, claiming that all three either breached various warranties or were negligent. Defendants denied liability.

It appears that shortly after the accident, plaintiff Fireman's Fund (the insurer of the two Spider Stagings) hired an electrical engineering expert to inspect the rotor brake system on the equipment. The stated findings of his inspection were that there was an accumulation of brake lining residue, worn brake linings and a scored brake drum. Eventually, plaintiff claimed, further testing showed that a solenoid, an electrical device manufactured by GE, which had been integrated into the braking system by Spider Staging, operated intermittently and then failed completely.

Consistent with these findings, defendant added GE, Graybar (the distributor of the solenoid), and Environmental as third-party defendants seeking indemnity or contribution. As noted previously, the theory against GE and Graybar was, in es-

sence, that through intermittent malfunctioning the solenoid caused the braking system to fail, thereby causing the accident to occur.

The theory of liability articulated against Environmental was that Environmental, purportedly by virtue of both common law and the rental agreement previously entered into, owed Spider indemnification.[1]

Rich settled his case against Spider Stagings for $730,000. The action against Crudele was dismissed. The case then proceeded to trial on the third-party indemnity and contribution actions with Fireman's Fund, the insurer of the two Spider Stagings and the party who paid the settlement, being substituted as the real party in interest. As noted earlier, Environmental obtained a directed verdict and the jury returned a verdict in favor of the remaining defendants.

Plaintiff presses on appeal four arguments: (a) the trial court erred in granting Environmental's motion for a directed verdict where, we are told, the indemnity provision contained in the rental agreement unequivocally provided that the lessor (Spider) may be indemnified for its own negligence from the lessee (Environmental) for personal injuries sustained by Environmental's employee; (b) the trial court abused its discretion by not allowing rebuttal testimony by plaintiff's expert concerning his view that there is always evidence of exterior charring on the outside of a solenoid casing that has overheated as a result of low voltage; (c) the trial court abused its discretion by not allowing plaintiff's expert to testify concerning alleged similar instances of solenoid malfunction

[1] We note that initially recovery was also sought against Environmental by way of contribution. This ground, however, was abandoned during trial.

which occurred 1966 through 1971 in laboratory tests; and (d) the trial court erred in awarding the defendants as costs, expert fees and expenses incurred in preparation for trial.

(a)

In the case at bar, the indemnity clause in question reads as follows:

"I/We the undersigned, do hereby rent and accept the above listed equipment and acknowledge that it is in good working condition and agree to pay the stipulated rental therefor and agree to take care of all the said equipment and to use it in a proper manner and agree that in the event any of the rented equipment is lost or destroyed before it is returned, to promptly pay to the company the fair value of such rented property, in cash, and if damaged or injured in any way, to pay an amount equal to the reasonable cost of repairing the same, *and further do hereby exonerate, indemnify and save harmless the company from all claims and liabilities to all parties for damage or loss to any person, persons or property in any way arising out of or during the use of said equipment.*" (Emphasis supplied.)

As a starting point in interpreting this clause, we note that:

"[t]he general rule in the interpretation of all contracts, including indemnity contracts, is to ascertain the intention of the parties. *Klever v. Klever* (1952), 333 Mich 179 [52 NW2d 653]; *Smeader v. Mason* (1954), 341 Mich 139 [67 NW2d 131]; *Sobczak v. Kotwicki* (1956), 347 Mich 242 [79 NW2d 471]. However, with regard to contracts indemnifying one against his own negligence, it is generally stated:

" 'It is well settled that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts,

where such intention is not expressed in unequivocal terms.' 27 Am Jur, Indemnity, § 15, p 464.

"In *Buffa v. General Motors Corporation* (ED Mich, 1955), 131 F Supp 478 at p. 482, the court stated:

" 'As a general proposition, a contract of indemnity which purportedly indemnifies against the consequences of one's own negligence is subject to strict construction and will not be so construed unless it clearly appears from the language used that it was intended to have that effect.'

\* \* \*

" 'It is also clear, however, that such clauses [indemnity clauses] are construed most strictly against the party who drafts them and the party who is indemnitee. *Michigan Chandelier Co. v. Morse* (1941), 297 Mich 41 [297 NW 64]; *In re Traub Estate* (1958), 354 Mich 263 [92 NW2d 480].' " *Meadows v Depco Equipment Co,* 4 Mich App 370, 375–376; 144 NW2d 844 (1966).

An examination of the principles contained in *Meadows, supra,* can leave no doubt that generally these indemnity provisions must clearly describe the indemnitor's obligation to indemnify the indemnitee. The great utility of this rule, policy considerations aside, is that it prevents parties from skillfully devising arguments at a later date that highly malleable, ambiguous language, in fact, evidences the parties' intent that one party should provide indemnity to the other even where it is for the indemnitee's own negligence. Thus, our focus must be on whether this language clearly sets forth such an intention on the part of the parties.

Doing so, there is no basis to justify a conclusion that a clear intent on the part of the parties existed. On the contrary, the inference seems plain that the language is susceptible to many varied meanings. We think the reasoning set forth in *Geurink v Herlihy Mid-Continent Co,* 5 Mich App

154, 158; 146 NW2d 111 (1966), wherein the appellant put great emphasis on the sweeping language, "any damage or injury suffered on the site of the work", is equally applicable herein:

" 'The phrase stressed heavily is indeed broad. But the broad, all-inclusiveness of language used is itself one of the indicia which the law regards as insufficient. The purpose to impose this extraordinary liability on the indemnitor must be spelled out in unmistakable terms. It cannot come from reading into the general words used the fullest meaning which lexicography would permit.' "

Plaintiff strenuously objects to our reliance on the rule of strict construction to affirm the trial court. Specifically, plaintiff urges that the rules of strict construction when interpreting these clauses have been relaxed by the Supreme Court's disposition in *Vanden Bosch v Consumers Power Co,* 394 Mich 428; 230 NW2d 271 (1975). The order rendered there declared, in part, "[a]lthough not 'expressly' stated in the agreement, we are persuaded from our reading of that agreement, in light of the surrounding circumstances, that the parties intended that Consumers Power be indemnified against liability for its own negligence of the type precipitating this litigation". *Vanden Bosch,* p 428. What was said by the Supreme Court in *Vanden Bosch* must be read in light of the circumstances contained therein. No language in the Supreme Court's order gives support to plaintiff's reliance on that case herein. Moreover, we think this Court has previously recognized the surrounding circumstances doctrine.

"We can agree that as in *Hoek v. Township of Allendale* (1910), 161 Mich 571, 575 (21 Ann Cas 118) [126 NW 987] where the defendant *told* plaintiff he 'would

stand back of him' or in *Rikerd v. Addison Fur Corp.* (1933), 263 Mich 436, 438 [248 NW 862] where one assured told another that he would not 'stand any loss,' that it was in the province of the jury to determine the intention of the parties." (Emphasis in original.) *Meadows, supra,* at 377.

See also *Klann v Hess Cartage Co,* 50 Mich App 703; 214 NW2d 63 (1973).

But it is clear that before a party can avail himself of this doctrine, these surrounding circumstances must be demonstrated. Such is not the case here.

In the case at bar, Crudele testified for Spider that no one from Environmental saw the equipment rental form contract containing the indemnity clause prior to the equipment's delivery to Environmental. Crudele further testified that there was no discussion of the indemnity clause between himself and Mr. O'Haverty, Environmental's president, when the latter signed the contract in Crudele's presence on the delivery of the equipment. Significantly, at no other time, Crudele conceded, was this contractual provision discussed. This hardly amounts to the type of surrounding circumstances from which the clear intention of the parties can be gleaned.

For the reasons stated above, we think the trial judge correctly granted Environmental a directed verdict.

(b)

At trial, plaintiff's expert, one Squillace, testified on direct examination that it was his opinion that the solenoid failure or malfunction was the result of a manufacturing defect. Without being able to specify exactly what the manufacturing defect

was, Squillace testified that it could have occurred in one of three ways. However, after specifying these three ways, he did recognize on direct examination that there could be other causes for solenoid failure, including overheating from low voltage.

Defendant's expert, Schultz, responded, as expected, that there was no manufacturing defect in the solenoid. He contended the defect in the brakes could have occurred in any number of ways. On cross-examination he was asked:

"Q (By Mr. Joselyn continuing). Now, when under voltage is the cause, if under voltage is the cause of solenoid failure, are you not also going to see some evidence of that, physical evidence of that on the outside of the exterior portion of the solenoid such as a searing or burning or anything of that kind?"

He replied:

"A Again, that is not necessary. Overheating could cause a solder to come loose or something to open without burning up the coil completely."

Thereafter, plaintiff proffered rebuttal evidence on a separate record to "demonstrate through expert testimony that overheating in the field always causes some exterior evidence of damage".

After hearing the offered testimony, the trial judge refused to allow the testimony into evidence. Plaintiff claims reversible error was occasioned by this refusal. We disagree.

It is well settled that the scope of rebuttal in civil cases is within the sound discretion of the trial judge. See, *e.g., Doyle Vacuum Cleaner Co v F J Siller & Co,* 55 Mich App 601; 223 NW2d 86 (1974), and *Barrows v Grand Rapids Real Estate*

*Board,* 51 Mich App 75; 214 NW2d 532 (1974). The trial judge rejected this evidence because, among other reasons, it properly belonged in the case in chief. We note that the plaintiff previously went into this area in his case in chief. We are of the view that this case falls into the category of those where "the line of demarcation between rebuttal evidence and that which should properly be given in chief * * * is more or less obscure". *Barrows, supra,* p 97. Thus, the matter was within the sound discretion of the trial court; and it was not abused herein. Moreover, we note that any conceivable prejudice by this ruling was alleviated by the trial judge's great liberality in allowing other rebuttal evidence in. *Doyle, supra.*

(c)

At trial, plaintiff attempted to introduce evidence that there had been previous laboratory failures of GE solenoids and, moreover, that these failures had been communicated to both GE and Graybar. Also, plaintiff sought to admit the results of laboratory tests performed on the solenoids in 1973, some two years after the accident occurred. The trial judge refused admittance of this evidence based upon his view that the probative value of the evidence was outweighed by its prejudicial effect.

The general rule in allowing evidence of this type was set forth in *Savage v Peterson Distributing Co, Inc,* 379 Mich 197, 202; 150 NW2d 804 (1967), wherein the Court stated:

" 'An issue as to the existence or occurrence of partic-

ular fact, condition, or event, may be proved by evidence as to the existence or occurrence of similar facts, conditions, or events, under the same, or substantially similar, circumstances.' "

With this in mind, we are again urged to find an abuse of discretion in the trial judge's refusal to admit this proffered evidence. We decline. The trial judge opined, and the plaintiff concedes, that the tests sought to be admitted by plaintiff, where the solenoids had failed completely in laboratory tests, were unlike the situation herein where the solenoid had operated in the field, but later was alleged to have intermittently malfunctioned. We cannot disagree with him.

### (d)

As noted earlier, plaintiff objects to the taxation, as an item of costs, of the preparation fees incurred by the prevailing parties' expert witnesses. MCLA 600.2164; MSA 27A.2164, has been consistently construed to mean that the trial court is empowered in its discretion to authorize expert witness fees, including preparation fees. *Haynes v Monroe Plumbing & Heating Co,* 48 Mich App 707, 721; 211 NW2d 88 (1973), *Caradonna v Thorious,* 17 Mich App 41, 46–47; 169 NW2d 179 (1969), *Gundersen v Village of Bingham Farms,* 1 Mich App 647, 649; 137 NW2d 763 (1965), *State Highway Commissioner v Rowe,* 372 Mich 341; 126 NW2d 702 (1964). Thus, no error was occasioned by the trial judge's actions here.

For the reasons hereinabove stated, we affirm. Costs of this appeal to defendants.