**Kathy POWERS, Plaintiff,**

v.

**APCOA STANDARD PARKING, INC, and Northwest Airlines, Inc., Defendants.**

No. 02–74611.

United States District Court, E.D. Michigan, Southern Division.

April 22, 2003.

James D. Brittain, Lincoln Park, MI, for plaintiff.

Daniel Seymour, Detroit, MI, for Northwest Airlines, defendant.

Richard P. Smith, Detroit, MI, for Apcoa Standard Parking, defendant.

## *MEMORANDUM AND ORDER DENYING NORTHWEST'S MOTION FOR JUDGMENT ON THE PLEADINGS* [1]

COHN, District Judge.

This is a negligence case. Plaintiff Kathy Powers (Powers) says she was injured on August 5, 2000 when a shuttle bus owned an operated by defendant APCOA Standard Parking, Inc. (APCOA) collided with one of defendant Northwest Airlines' (Northwest) tugs pulling a baggage cart on the tarmac at Detroit Metropolitan Airport. Powers says the collision forced her to be thrown from her seat and into the aisle and caused her serious and permanent injuries. Powers filed a two count complaint for negligence. Count one is against APCOA; count two is against Northwest.

Northwest timely removed the case to federal district court based on diversity jurisdiction. Northwest filed a cross claim for breach of contract and contractual indemnity against APCOA based on a service agreement between the parties under which Northwest says APCOA must defend and indemnify it against Powers' lawsuit. APCOA filed an answer, generally denying Northwest's allegations.

Before the Court is Northwest's motion for judgment on the pleadings on its cross claim based on the service agreement. For the reasons which follow, the motion will be denied.

### I. Background

Powers claims that both APCOA and Northwest were negligent. Specifically, she says APCOA was negligent in "failing to recognize traffic conditions," "failing to make a safe stop," "traveling at an excessive speed given the conditions," "applying the brakes and stopping the vehicle at a rate too fast for passenger safety," "failing to maintain a safe distance," and "failing to yield or stop." *See* Amended Complaint at ¶ 6.

She says Northwest was negligent "failing to recognize traffic conditions," "failing to maintain a safe distance between their tug and other vehicles on the tarmac," "failing to yield or stop" the tug, "traveling at an excess speed given the conditions," and "driving a collision course" with the shuttle bus which caused the shuttle bus to brake hard. *See* Amended Complaint at ¶ 14.

As of the time of the collision, APCOA and Northwest were parties to a service agreement under which APCOA per-

---

1. Although the Court originally scheduled this matter for hearing, upon review of the parties' papers, the Court finds that oral argument is not necessary. *See* E.D. Mich. LR 7.1(e)(2).

formed passenger shuttle services for Northwest passengers at Detroit Metro Airport. The relevant section of the service agreement provides:

### Section 7—Indemnity

**Contractor [APCOA] agrees to release, indemnify, hold harmless, and defend Northwest,** it [sic] officers, directors, employees, agents, successors, and assigns, **from and against any and all claims, losses, damages, and liabilities, causes of action, suits, judgments, and expenses, whether groundless or not,** including but not limited to reasonable attorney's fees, costs, and related expenses, **for bodily or personal injury** including death, **to any persons including but not limited to, employees of Contractor,** and for any loss of, damage to, or destruction of any property owned or used by, or in the care, custody or control of Contractor, **arising out of or in any manner connected with the Contractor's performance of the Agreement.**

(Emphasis added).

## II. Judgment on the Pleadings

Fed.R.Civ.P. 12(c) provides that, "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Judgment may be granted under Rule 12(c) where the movants clearly establish that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law. *Beal v. Missouri Pacific R.R.*, 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941); 5 C. Wright & A. Miller, Federal Practice and Procedure (hereinafter Wright & Miller) § 1368, p. 518. All well-pleaded material allegations of the pleadings of the opposing party must be taken as true, while all contravening assertions in the movants' pleadings are taken as false. Given this standard, the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.

*Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 479 F.2d 478 (6th Cir.1973); 5 Wright & Miller, § 1368, p. 520.

## III. Analysis

### A.

Northwest argues that Powers' claim against Northwest arises from the manner in which APCOA undertook to provide services under the service agreement. Northwest argues that the unambiguous language of the service agreement says that APCOA will indemnify Northwest for any personal injury claim that arises out of or is connected with APCOA's performance of the service agreement. It does not matter whether Northwest may have also been at fault. Here, the APCOA shuttle bus was operating on the tarmac pursuant to the service agreement and "it strains credibility" to conclude that the collision did not arise out of the service agreement. There is no limitation on the indemnification that APCOA agreed to undertake; the indemnification clause is triggered regardless of whether Northwest may likewise have been negligent.

Moreover, says Northwest, under Michigan law, a defendant who is found to be at fault may nonetheless maintain an action for express contractual indemnity. Indemnity contracts are interpreted like any other contract. On the face of the pleadings, Powers says that she was a passenger in APCOA's shuttle bus and that APCOA and Northwest were negligent. The shuttle bus was operating in accordance with the service agreement. The indemnity clause clearly applies.

APCOA, on the other hand, points out that the operative language of the service agreement that says APCOA agrees to indemnity Northwest for any claims "arising out of or in any manner connected with the **Contractor's** [APCOA's] performance of the agreement." The service agree-

ment does not say that APCOA will indemnify Northwest for its negligent acts. The service agreement says only that APCOA will indemnify Northwest for claims arising out of APCOA's performance of the agreement. In order for APCOA to have agreed to indemnify Northwest for Northwest's negligent acts, the service agreement would have so stated. Here, the intention of the parties is clear—APCOA would indemnify Northwest for APCOA's own actions if a claim arose out of APCOA's performance of its agreement with Northwest. APCOA owes no duty of indemnification to Northwest for Northwest's actions based on the indemnity clause.

### B.

 When construing a contract, the trial court must ascertain the intent of the parties from the language of the contract. *Zurich Ins. Co. v. CCR & Co.* (On Rehearing), 226 Mich.App. 599, 604, 576 N.W.2d 392 (1997). Generally, the language of a contract is interpreted according to its plain and ordinary meaning. *Schroeder v. Terra Energy, Ltd.*, 223 Mich.App. 176, 182, 565 N.W.2d 887 (1997). Indemnity contracts, like other contracts, are to be enforced so as to effectuate the intentions of the parties. *Title Guaranty & Surety Co. v. Roehm*, 215 Mich. 586, 184 N.W. 414 (1921).

 Contracts to indemnify the parties for damages caused by one party's sole negligence are not unenforceable or contrary to public policy of this state. However, a contract which purportedly indemnifies one against the consequences of his or her own negligence is subject to strict construction and will not be so construed unless it clearly appears that it was intended to cover the indemnitee's own negligence. *Fireman's Fund American Ins. Cos. v. General Electric Co.*, 74 Mich. App. 318, 253 N.W.2d 748 (1977); *Hubbert v. Acme Equipment Co.*, 55 Mich.App. 313,

222 N.W.2d 224 (1974); *Klann v. Hess Cartage Co.*, 50 Mich.App. 703, 214 N.W.2d 63 (1973); *Geurink v. Herlihy Mid–Continent Co.*, 5 Mich.App. 154, 146 N.W.2d 111 (1966); *Meadows v. Depco Equipment Co.*, 4 Mich.App. 370, 144 N.W.2d 844 (1966). Also, indemnity contracts are construed most strictly against the party who drafts them and the indemnitee. *Fireman's Fund*, supra.

In *Hubbert, supra*, the Michigan Court of Appeals considered whether a contract between a tenant and ACME for the lease of a crane obligated the tenant to indemnify ACME, the owner of the crane, for ACME's own negligence. The contract provided in relevant part:

> TENANT agrees to defend ACME from and to save ACME safe and harmless from any and all claims that may rise from TENANTS use or handling of the above equipment.

ACME was sued by plaintiff Hubbert when a bucket of the crane tipped as he rode it up out of an excavation site, causing him to fall 20 feet. Hubbert alleged that the crane was unsafe and the ACME negligently failed to properly inspect, repair, or warn the plaintiff's employer (the tenant) of the possibility that the bucket could tip. ACME filed a third party complaint against the tenant, seeking indemnification based on the contract and moved for summary judgment after ACME settled with the plaintiff. The trial court denied the motion and dismissed the case against the tenant. The court of appeals affirmed, holding that

> the language used is not sufficient to indemnify the indemnittee [ACME] for claims arising out of the indemnitee's own acts of negligence. Tenant ... only agreed to defend and hold ACME harmless for claims arising out of [tenant's] use of the equipment, i.e. for [tenant's] own acts of negligence. It cannot be said that the language used amounted to

a clear and unequivocal expression that [tenant] would indemnify ACME's negligent acts; therefore the language is strictly construed against the drafter-indemnitee ACME.

55 Mich.App. at 316, 222 N.W.2d 224.

In *Geurink v. Herlihy, supra,* an employee of a roofing subcontractor sued the general subcontractor for injuries suffered when a roof collapsed, alleging that the roof was not adequately supported due to the general contractor's negligence. The general contractor filed a third party complaint against the subcontractor based on an indemnification clause in a purchase order. The trial court granted the subcontractor's motion for summary judgment and the court of appeals affirmed.

The purchase order in *Geurink* provided in relevant part:

The subcontractor hereby waives and releases the general contractor from all liability for injuries to persons and damages to and loss of property which the subcontractor may suffer or sustain in performance of this subcontract, or in connection herewith; and the subcontractor hereby agrees and covenants to indemnify and hold harmless the general contractor from all liability, claims, demands, causes of action and judgments arising by reason of any personal injuries or loss and damage to property suffered by or sustained by any of the subcontractor's employees, agents or officers while on the site of the work being performed under this subcontract, or going to or from said site, or in furnishing or carrying material to said site.

The general contractor argued that the above provision obligated the subcontractor to indemnify it against acts caused by the general contractor's negligence. The court of appeals disagreed, stating:

[The general contractor's] claim against [the subcontractor] was based on an all-inclusive indemnity clause contained in the purchase order. The appellant places great emphasis on the broad language, 'any' damage or injury suffered 'on' the site of the work. As stated in *Batson–Cook Company v. Industrial Steel Erectors,* 257 F.2d 410 (5th Cir.1958), on p. 412:

'(T)he problem inexorably begins and ends as one of construction of the specific contractual terms, and that in this process it is the law which steps in and tells the parties that while it need not be done in any particular language or form, unless the intention is unequivocally expressed in the plainest of words, the law will consider that the parties did not undertake to indemnify one against the consequences of his own negligence.' and on p. 413: 'The phrase stressed heavily is indeed broad. But the broad, all inclusiveness of language used is itself one of the indicia which the law regards as insufficient. The purpose to impose this extraordinary liability on the Indemnitor must be spelled out in unmistakable terms. It cannot come from reading into the general words used the fullest meaning which lexicography would permit.'

The indemnifying language in the purchase order does not insulate the appellant from the consequences of his own negligent conduct unless it is clearly shown that the parties expressly agreed to this type of indemnification. *Meadows v. Depco Equipment Co. v. McLouth Steel Corporation,* 4 Mich.App. 370, 144 N.W.2d 844 (1966). The trial court was correct in its ruling that the indemnity agreement did not give [the general contractor] a right of action against [the subcontractor].

5 Mich.App. at 158, 146 N.W.2d 111.

 In light of the precedents discussed above, APCOA's position is well taken. The plain language of the indemnity clause

of the service agreement says that APCOA will indemnify Northwest for any actions arising out of *APCOA's performance of the agreement.* It does not say that APCOA will indemnify Northwest for any actions *arising out of Northwest's performance of the agreement.* If APCOA agreed to indemnify Northwest for Northwest's own negligence, the indemnify clause should have clearly and expressly so stated. Like the indemnity clause in *Hubbert* that stated that the tenant agreed to indemnify ACME for claims arising from the "tenants use," the indemnity clause here states that APCOA will indemnify Northwest for claims arising out of "APCOA's performance of the agreement."

It appears that Northwest, like the general contractor in *Geurink,* is attempting to give the indemnity clause too broad an application by focusing on the language in the indemnity clause "arising out of in any manner connected with" APCOA's performance of the service contract. This broad language, however, cannot be the basis to obligate APCOA for Northwest's negligent acts. Michigan law is clear that an indemnitee can escape liability for its own negligent acts only where the parties have expressly agreed and clearly stated such an intention. This is not the case here. The indemnity clause does not state that AP-COA agrees to indemnify Northwest for any claims arising out of its *and North-west's* performance of the agreement. More will not be read into the indemnity clause than what it says on its face.

Northwest's reliance on *Williams v. Unit Handling Sys.,* 433 Mich. 755, 449 N.W.2d 669 (1989) for the proposition that a party at fault may still be entitled to indemnification is misplaced. In *Williams,* the Michigan Supreme Court addressed whether freedom from fault is necessary to maintain an action for implied duty of indemnification. The court held that is was. In so holding, the court noted that "[f]reedom from active fault is not a necessary prerequisite to maintaining an action for express contractual indemnity, [w]here there is an express contract of indemnity, a defendant who is found to be at fault may nevertheless maintain an action for express contractual indemnity against a third party...." While, consistent with *Williams,* Northwest can seek indemnification from APCOA even if Northwest is found to be at fault, the language of indemnity clause still controls.

Overall, the fair interpretation of the indemnity clause here is that the parties intended that APCOA will indemnify Northwest *to the extent that APCOA is at fault in performing the service agreement.* The parties did not intend that APCOA would indemnify Northwest for its own negligent acts. As such, Northwest is obligated to defend against Powers' claim of negligence.

## V. Conclusion

For the reasons stated above, Northwest's motion for judgment on the pleadings is DENIED.

SO ORDERED.