TITLE GUARANTY & SURETY CO. *v.* ROEHM.

1. INDEMNITY—PRINCIPAL AND SURETY—STRICTISSIMI JURIS.
    Where defendant signed bonds to indemnify a surety company against any loss it might sustain as the surety on the bonds of a public highway contractor, he is an indemnitor and not a surety and is not entitled to invoke the rule of *strictissimi juris*, in an action thereon.

2. SAME—CONSTRUCTION—INTENTION.

A contract of indemnity should be construed so as to cover all losses, damages, or liabilities to which it reasonably appears to have been the intention of the parties that it should apply.

3. SAME—INDEMNIFYING AGAINST TOTAL OF TWO BONDS AS ONE—INTENTION.

The fact that plaintiff surety company signed two bonds of $11,000 each, one to the township and one to the people of the State of Michigan, while defendant's indemnity bond recited the making of but one bond of $22,000, would not operate to relieve him of liability, where all the parties knew, or were presumed to know, the facts, since to hold otherwise would frustrate the intention of the parties.

4. SAME—NOTICE OF SUIT—FAILURE TO DEFEND—ESTOPPEL.

Where defendant had notice of the suits against the surety company by materialmen upon the statutory bond, and failed to defend upon the ground that it was not full enough in its terms to justify recovery thereon, he cannot now be heard to complain thereof.

5. SAME.

Nor, for the same reason, can he now complain of the recovery on the two bonds jointly without separating the amount of the recovery as to each.

Error to Houghton; O'Brien (Patrick H.), J.   Submitted June 8, 1921.   (Docket No. 29.)   Decided October 3, 1921.

Assumpsit by the Title Guaranty & Surety Company against Paul P. Roehm on indemnity bonds.   Judgment for plaintiff.   Defendant brings error.   Affirmed.

*Rees, Robinson & Petermann,* for appellant.

*Galbraith & McCormack* (*Thomas, Shields & Silsbee,* of counsel), for appellee.

In September, 1912, one Thomas Drapeau was the

successful bidder for the construction of a highway in Portage township, Houghton county, known as "the new Otter Lake road." He entered into a contract with the township for its construction. Mr. Drapeau was required to and did execute two bonds aggregating $22,000, one for $11,000 running to the township, and the other for a like amount running to the people of the State of Michigan (see Act No. 187, Pub. Acts 1905, 3 Comp. Laws 1915, § 14827 *et seq.*). The present plaintiff signed both bonds as surety at the instance and request of this defendant. But before or cotemporaneous with such signing defendant executed a writing, to the surety company called an "indemnity bond." In this undertaking it was recited that the surety company—

"has signed and executed or is about to sign and execute * * * a certain bond or undertaking in the penal sum of twenty-two thousand ($22,000.00) dollars, on behalf of Thomas Drapeau, in favor of Portage township, Houghton county, Michigan, and the State of Michigan, and bearing date on or about the date hereof, reference to which said bond or undertaking is hereby made for the purpose of certainty, a copy of which instrument is or may be hereto attached."

And it was conditioned that defendant—

"shall hold and keep harmless the company from and against any and all liability, loss, damages, suit or suits (whether such suit or suits be rightfully or wrongfully brought), costs, counsel fees, charges and expenses of whatever nature or kind which the company shall or may at any time incur, sustain or be put to, for, or by reason or in consequence of the company having given and executed the said bond or undertaking, then this obligation shall be void; otherwise to be and remain in full force and virtue."

It was further provided:

"This bond of indemnity shall be liberally construed so as to fully protect and indemnify the company."

In June, 1913, Drapeau entered into another contract for an extension of the highway beyond the work contemplated by the first contract from which later contract it would appear that the township had the option of having such work done at the same average rate per unit.   He executed two bonds in the sum of $3,100, one to the township and one to the people of the State of Michigan.   These bonds were likewise signed by plaintiff as surety, and defendant gave to it an undertaking called an "indemnity agreement" which recited that he had requested, the company—

"to sign and execute a certain bond or undertaking which bond is given for the building of a portion of the highway from Superior City to Otter Lake in Houghton Co., Mich., reference to which bond or undertaking is hereby made for the purpose of certainty and a copy of which instrument is or may be hereto attached."

This undertaking contained among others the following provision:

"That we will at all times indemnify and keep indemnified the company, and hold and save it harmless from and against any and all demands, liabilities, loss, damage or expense of whatsoever kind or nature, including counsel and attorneys' fees, which it shall at any time sustain or incur by reason or in consequence of having executed the said instrument; and that whenever any claim or claims shall have been made upon the company under the said instrument, if in judgment of the company it is determined that such claim or claims should be paid, we covenant, promise and agree to pay over in cash to the company upon its demand therefor, the amount or amounts of said claim or claims, and if the company deny liability concerning any claim or claims and suit or suits be brought against the company under said instrument to recover the amount of said claim or claims, or any other proceeding or proceedings be taken thereon involving the company, whether the suits and proceedings be against the principal named in the said in-

strument and the company jointly, or against the company alone, whether such suit or proceeding or proceedings be rightfully or wrongfully brought or instituted we covenant and agree to defend said suits and proceedings to a conclusion at our own expense or to permit the company, if it so elect, to place the defense of said suits and proceedings in the hands of its own attorneys or counsel, in which latter event we covenant, promise and agree to pay over to the company upon its demand such sum or sums of money as may be required to retain said attorneys or counsel and to defray the expenses of conducting the defense of said suits and proceedings and further, we covenant and agree to satisfy and discharge any and all judgments recovered against the company under said instrument as soon as the same shall be entered or docketed unless an appeal be taken and bond or bonds to secure or stay the collection of such judgment or judgments be procured by the undersigned and filed as required by law." * * *

Mr. Drapeau died in July, 1913, and the contracts. were completed by his administrator. Defendant in three separate instruments in which he describes himself as "indemnitor of the bond of Thomas Drapeau issued by the Title Guaranty & Surety Company" consented that the township pay to Mr. Drapeau's administrator an aggregate of $2,550 to be used for the payment of labor debts. Three parties who had furnished material used in the construction of the highway brought suit against the surety company, counting on both bonds which run to the people of the State of Michigan. Mr. Roehm was given notice of these cases and of all the proceedings therein, and a copy of the declaration in each case was served on him. He made no defense to any of the actions. The surety company urged all defenses apparently thought available but judgments were rendered in all the cases and were paid by the surety company. Thereupon this action was brought upon defendant's undertakings. The case was tried by the court without a jury

and findings of fact and conclusions of law in accordance with plaintiff's contention were filed, and judgment was thereupon entered. Defendant properly excepted to the conclusions of law but we do not understand him to question the findings of fact.

FELLOWS, J. (*after stating the facts*). It is the claim of the defendant that he is only bound by "the letter of the bond;" that as to the first undertaking he obligated himself with reference to only one bond, a bond running to the township of Portage and the people of the State of Michigan in the sum of $22,000, and that no such bond was signed by plaintiff, but that two bonds each in the sum of $11,000, one running to the township and one to the people, were signed by plaintiff; that as to the second undertaking the language is indefinite, provided for only one bond, not two, that the description of the highway was different in the undertaking from that found in the bonds signed by the plaintiff, and that if he is in any way bound by the second undertaking it is only with reference to the bond running to the township and not the one running to the people; that as he saw none of the bonds signed by the plaintiff he had no knowledge of their terms; and that he is not liable in this action. In short it is his claim that he is a surety, and a gratuitous one, and is entitled to invoke the rule of *strictissimi juris*.

Defendant did not sign as surety with Mr. Drapeau. Both of the undertakings signed by him were contracts of indemnity and he was an indemnitor and not a surety. These contracts of indemnity must be construed and liability determined by the rules applicable to such contracts and not by rules applicable to contracts of suretyship. The rule of *strictissimi juris* may not be applied to such contracts.

"In the interpretation of indemnity contracts, the

cardinal rule is that which applies to contracts generally, *i. e.,* to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. Contracts of indemnity, therefore, must receive a reasonable construction so as to carry out, rather than defeat, the purpose for which they were executed. To this end they should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design; nor, on the other hand, so loosely or inartificially as to relieve the obligor from a liability within the scope or spirit of their terms. Where the general import of a contract is one of indemnity, it is the rule that all of the words used therein should be construed to be in harmony with, and subservient to, the general purpose of the bond." 14 R. C. L. p. 46.

"In construing contracts of indemnity the ordinary rules of construction employed in the interpretation of contracts generally are applicable. Indemnity contracts like other contracts are to be so expounded as to effectuate the intention of the parties. Thus in ascertaining the intention of the parties, the court must take into consideration not only the language of the contract but the situation of the parties and the circumstances surrounding them at the time the contract was made." 22 Cyc. p. 84.

"A contract of indemnity should be construed so as to cover all losses, damages, or liabilities to which it reasonably appears to have been the intention of the parties that it should apply, but not to extend to losses, damages, or liabilities which are neither expressly within its terms nor of such character that it can reasonably be inferred that they were intended to be within the contract." 16 Am. & Eng. Enc. Law (2d Ed.), p. 173.

In *Fidelity & Deposit Co.* v. *Hibbler,* 177 Mich. 490, we quoted the above language from the American & English Encyclopædia of Law and then said, speaking through Mr. Justice KUHN:

"Applying this rule of construction to this agreement, it seems to have been the intention of the parties

to make an agreement which was to be an absolute undertaking by the defendants, the indemnitors, to reimburse the plaintiff, the indemnitee, for any loss sustained by it in connection with William H. Hibbler. There is no question but that the plaintiff acted in good faith. When its liability was established it paid its loss, and, under the agreement which the defendants made with it, it should now be reimbursed."

What were the circumstances surrounding the parties when these undertakings were entered into? Mr. Drapeau had a contract for a public improvement. He was required to give the statutory bond and a bond to the township. All parties knew this, or were presumed to know it. The aggregate was $22,000. From the fact that Mr. Drapeau did not leave an estate sufficient to pay his indebtedness we may infer that he was not forehanded. Plaintiff if it signed his bond or bonds would obligate itself for a large amount. Defendant agreed to indemnify it. To hold that he did not become liable and did not indemnify it because two bonds were given instead of one, because the two obligees were named in separate bonds instead of being joined in one bond, because the description of the work was not as definite as it might have been when everyone knew what highway was referred to and what highway they were contracting with reference to, would not only be a narrow and strained construction of the contract but would absolutely frustrate the intention of the parties.

We need not consider whether the second bond to the people of the State of Michigan was full enough in its terms to justify recovery upon it by materialmen. Defendant had notice of the suits brought by them upon this bond and had an opportunity to then make such defense. He did not chose to embrace such opportunity and cannot now be heard to complain. *Knickerbocker* v. *Wilcox*, 83 Mich. 200, 210; 22 Cyc.

215—Mich.—38.

p. 106, and the authorities there cited.   This is likewise true of the question of recovery on the two bonds jointly without separating the amount of the recovery as to each.   Upon the latter question, however, see *Sullivan* v. *Casualty Co.*, 208 Mich. 68, 210 Mich. 625.

The judgment is affirmed.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.