## PRITTS v J I CASE COMPANY

Docket No. 46111. Submitted November 6, 1980, at Detroit.—Decided
July 27, 1981. Leave to appeal applied for.

Merle Pritts and Frances Pritts brought an action based on a
theory of products liability against Mi-Jack Products Company,
and Drott Manufacturing Company, a division of J. I. Case
Company, for damages arising out of injuries sustained by
Merle Pritts in an industrial accident while employed by Rag-
nar-Benson Company. The accident involved a travel lift manu-
factured by Drott pursuant to an order by Mi-Jack which, in
turn, leased the travel lift to American Prestressed Concrete
Company which manufactured components for and whose man-
agement and obligations were later assumed by Ragnar-Benson.
Prior to the accident, Ragnar-Benson and Mi-Jack entered into
a lease agreement involving the travel lift, which agreement
contained an indemnity provision, indemnifying Mi-Jack for
liability for any loss or damage caused by the failure of the
travel lift. Pursuant to the terms of the agreement, Mi-Jack
filed a third-party claim against Ragnar-Benson seeking indem-
nity. Ragnar-Benson counterclaimed against Mi-Jack and Drott.
Mi-Jack and Drott filed cross-claims against each other. During
trial, Mi-Jack contended that the indemnity clause applied,
tendered the defense to Ragnar-Benson, and notified it of an
impending settlement. Upon Ragnar-Benson's refusal to defend
the claim against Mi-Jack, Mi-Jack settled the claim against it.
Pursuant to the settlement, the cross-claims involving Mi-Jack
and Drott were dismissed. American Prestressed and Drott
settled the principal claims against them, leaving Mi-Jack's

REFERENCES FOR POINTS IN HEADNOTES
[1, 7] 41 Am Jur 2d, Indemnity §§ 13, 15.
[2] 41 Am Jur 2d, Indemnity § 13.
[3] 5 Am Jur 2d, Appeal and Error § 948.
[4] 41 Am Jur 2d, Indemnity § 14.
[5] 17 Am Jur 2d, Contracts § 149.
[6] 41 Am Jur 2d, Indemnity § 33.
[8] 17 Am Jur 2d, Contracts §§ 465, 466.
[9] 17 Am Jur 2d, Contracts § 77.
[10] 41 Am Jur 2d, Indemnity § 5.

claim against Ragnar-Benson and Ragnar-Benson's counter-claims against Mi-Jack and Drott to be decided. Thereafter, the jury was excused and the trial court ruled that the settlement between Mi-Jack and the plaintiffs was reasonable and that the indemnity clause did not indemnify Mi-Jack for its own negligence, Wayne Circuit Court, Maureen P. Reilly, J. Mi-Jack appeals. Ragnar-Benson cross-appeals. *Held:*

1. The trial court erred in holding that the indemnity clause did not indemnify Mi-Jack for its own negligence. The language of the clause supports the inclusion of Mi-Jack's negligence within the broad, all-inclusive language of the indemnity agreement, and it is clear that Ragnar-Benson intended to accept whatever language was offered by Mi-Jack.

2. The trial court did not err in concluding that the amount of Mi-Jack's settlement with plaintiffs was reasonable. Ragnar-Benson is not entitled to a hearing concerning the reasonableness of the settlement, any error occasioned by the trial court's failure to consider proffered evidence relating to the amount of the settlement being harmless.

3. The indemnity agreement does not violate the statutory proscription against the inclusion of such agreements in building construction contracts.

4. The trial court properly excluded evidence varying the written agreement between Mi-Jack and Ragnar-Benson as being violative of the parol evidence rule.

5. Ragnar-Benson is not entitled to common-law indemnification against Mi-Jack, its liability not having arisen by operation of law.

Affirmed in part, reversed in part.

1. INDEMNITY — NEGLIGENCE — JUDICIAL CONSTRUCTION.

Broad, all-inclusive indemnification language in a contract may be interpreted to protect an indemnitee against his own negligence where such intent can be ascertained from other language in the contract, surrounding circumstances, or from the purpose sought to be accomplished by the parties.

2. INDEMNITY — JUDICIAL CONSTRUCTION.

Indemnity contracts are construed in accordance with the rules for construction of contracts generally; the cardinal rule for their construction is to enforce them so as to effectuate the intentions of the parties, which intention is determined by considering not only the language of the contract but also the situation of the parties and the circumstances surrounding the contract; in order to be effective, the terms must be unequivo-

cal, and the contract will be construed most strictly against the drafting party and the indemnitee.

3. INDEMNITY — FINDINGS OF FACT — APPEAL.

Findings concerning the intent of parties to an indemnity contract are factual and will not be reversed on appeal unless clearly erroneous, *i.e.,* the reviewing court, considering the record as a whole, is left with the definite and firm conviction that a mistake has been committed.

4. INDEMNITY — JUDICIAL CONSTRUCTION — WORDS AND PHRASES.

Use of the word "all" in an indemnity contract, in its ordinary and natural meaning, evidences an intent by the parties to employ the broadest classification possible, leaving no room for exceptions, and such interpretation is consistent with the rule of construction that indemnity agreements should be construed so as to give reasonable meaning to all provisions, leaving no useless or inexplicable language or creating no surplusage.

5. CONTRACTS — JUDICIAL CONSTRUCTION.

A party who has not read the contents of a contract before signing it may not claim that his intention was different from that stated in the writing.

6. INDEMNITY — POTENTIAL LIABILITY — SETTLEMENT OF CLAIMS.

An indemnitee who tenders an indemnification defense and a notice of settlement to an indemnitor prior to settling a claim need show only potential liability in order to establish a claim for indemnity where the settlement is reasonable in light of the risk of exposure as determined by estimating the probable amount of judgment were a plaintiff to prevail against the indemnitee at trial.

7. INDEMNITY — CONSTRUCTION INDUSTRY INDEMNITY AGREEMENTS — SALE OR LEASE OF CONSTRUCTION EQUIPMENT.

Provisions in contracts for the sale or lease of equipment to contractors which purport to indemnify the seller or lessor from liability for his own negligence are not violative of the statutory proscription against the inclusion of such clauses in building construction contracts (MCL 691.991; MSA 26.1146[1]).

8. SALES — CONFIRMATION OF AGREEMENTS — MODIFICATION OF AGREEMENTS — STATUTES.

A written confirmation or a purchase order form which varies the terms of an original written agreement signed by the parties to the agreement does not become part of the contract unless

agreed upon by the parties or the parties are merchants and the variance is immaterial (MCL 440.2207; MSA 19.2207).

9. EVIDENCE — PAROL EVIDENCE — CONTRACTS.
    Evidence which is inconsistent with or contradictory to a written agreement is properly excluded as violative of the parol evidence rule in an action involving the agreement.

10. INDEMNITY — INDEMNITY CONTRACTS — COMMON-LAW INDEMNITY.
    A party subject to liability based on a contract of indemnity cannot seek common-law indemnity from the indemnitee because its liability does not arise by operation of law.

*Harvey, Kruse & Westen, P.C.* (by *John A. Kruse* and *Michael F. Schmidt*), for Mi-Jack Products Company.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C.,* for J. I. Case Company and Drott Manufacturing, a division of J. I. Case Company.

*Sullivan, Ranger, Ward & Bone, P.C.* (by *Maureen Holahan*), for Ragnar-Benson.

Before: M. F. CAVANAGH, P.J., and D. F. WALSH and D. C. RILEY, JJ.

D. C. RILEY, J. This appeal stems from a products liability action originally filed by Mr. Pritts against Mi-Jack Products Company and Drott Manufacturing Company, a division of J. I. Case Company, for injuries sustained in an industrial accident on August 9, 1973. The accident occurred when a co-employee drove a travel lift over plaintiff's legs while both were working for their employer, Ragnar-Benson Company.

It is undisputed that the travel lift was manufactured by Drott in 1971 pursuant to an order by Mi-Jack, one of its dealers. Mi-Jack leased the travel lift to American Prestressed Concrete Company, a firm engaged in the manufacturing of

prestressed concrete components for Ragnar-Benson. In 1972, when American Prestressed encountered financial difficulties, it became controlled by Ragnar-Benson, who assumed its management and obligations.

On June 20, 1973, Ragnar-Benson and Mi-Jack entered into a lease agreement for the travel lift, using a form drafted by Mi-Jack, which contained the following indemnification clause:

"Lessee agrees that Lessor shall not be held responsible for any loss or damage to Lessee, its customers, or any third parties, caused by failure of the Equipment covered by this lease to function in whole or in part. *Lessee shall indemnify Lessor against, and hold Lessor harmless from any and all claims, actions, suits, proceedings, costs, expenses, damages and liabilities, including attorney's fees, arising out of, connected with or resulting from the Equipment,* including without limitation the manufacture, selection, delivery, possession, use, operation or return of the Equipment * * *." (Emphasis added.)

Ragnar-Benson's agent signed the lease, admittedly without reading the indemnification provision. According to his trial testimony, he knew all equipment leasing agreements contained such clauses, and he was more interested in the lease's description of the equipment and its price. The major issue on appeal is whether or not the indemnification clause can be construed to protect Mi-Jack, the indemnitee, from its own negligence.

The trial of Pritts' claims began as a jury trial. Pritts claimed that Mi-Jack was negligent by leasing the travel lift without certain safety devices. The evidence showed that, from 1972 until well after the time of the accident, the lift had been in the possession and control of Ragnar-Benson. Dur-

ing the trial, Mi-Jack, contending that the indemnity clause in the lease applied and that Ragnar-Benson would, therefore, be liable for Mi-Jack's negligence, tendered the defense to Ragnar-Benson and notified it of an impending settlement. Upon Ragnar-Benson's refusal to defend the claim, Mi-Jack settled the claim against it for $350,000. American Prestressed and Drott also settled the claims against them.[1]

Following the settlement, the jury was excused and the remaining issues were tried by the judge. The judge ruled that Mi-Jack's settlement with plaintiffs was reasonable and based upon Mi-Jack's potential liability. The judge further ruled that the indemnity provision was ambiguous and that, although Mi-Jack intended to be indemnified for injuries occurring when the travel lift was out of its control, there was no intent that Mi-Jack was to be indemnified for its own negligence. In short, the judge was not convinced that the language of the indemnity clause clearly and unequivocally indemnified Mi-Jack for its own negligence. Mi-Jack appeals that ruling as of right.

The interpretation of indemnification provisions purporting to absolve a party from liability for loss caused by its own negligence has "traditionally plagued both drafters and courts alike". *Levine v Shell Oil Co,* 28 NY2d 205; 269 NE2d 799 (1971). The *Levine* Court succinctly stated the reasons why indemnification clauses have caused so much difficulty.

---

[1] Prior to trial, Mi-Jack had filed a third-party claim against Ragnar-Benson seeking indemnity pursuant to the terms of the lease agreement. Ragnar-Benson filed a counterclaim against Mi-Jack and Drott. Mi-Jack and Drott also filed cross-claims against each other. Pursuant to the settlement, the cross-claims involving Mi-Jack and Drott were dismissed, leaving Mi-Jack's indemnity claim against Ragnar-Benson and Ragnar-Benson's counterclaims against Mi-Jack and Drott as the only issues to be decided.

"Since one who is actively negligent has no right to indemnification unless he can point to a contractual provision granting him that right, a rule has evolved under which courts have carefully scrutinized these agreements for an expression of an intent to indemnify and for some indication of the scope of that indemnification." *Levine, supra,* 211.

In Michigan, the rule appears to be that broad, all-inclusive indemnification language may be interpreted to protect the indemnitee against its own negligence if such intent can be ascertained from other language in the contract, surrounding circumstances, or from the purpose sought to be accomplished by the parties. *Vanden Bosch v Consumers Power Co,* 394 Mich 428; 230 NW2d 271 (1975). In *Vanden Bosch,* Ferro-Cast had agreed to indemnify Consumers Power against loss "arising in connection with or as a direct or indirect result of a location of such building under the transmission and/or distribution line wires of said second party". This Court ruled that it was "only a matter of inference as to whether or not the agreement covers the negligence of the indemnitee" and that "[s]ince the agreement did not specifically state that it covered the negligent acts of the indemnitee" held that the trial court was correct in ruling that indemnification should not be permitted. *Vanden Bosch v Consumers Power Co,* 56 Mich App 543, 559; 224 NW2d 900 (1974).

The Michigan Supreme Court reversed, however, holding that:

"'Although not 'expressly' stated in the agreement, we are persuaded from our reading of that agreement, in light of the surrounding circumstances, that the parties intended that Consumers Power be indemnified against liability for its own negligence * * *." 394 Mich 428.

Before turning to the indemnity clause at issue in the present case, we note several well-established rules of construction. An indemnity contract is construed in accordance with the rules for the construction of contracts generally. *Meadows v Depco Equipment Co,* 4 Mich App 370; 144 NW2d 844 (1966). The cardinal rule in the construction of indemnity contracts is to enforce them so as to effectuate the intentions of the parties. *Title Guaranty & Surety Co v Roehm,* 215 Mich 586; 184 NW 414 (1921). Intention is determined by considering not only the language of the contract but also the situation of the parties and the circumstances surrounding the contract. *Id.* Indemnity contracts are construed most strictly against the party who drafts them and against the party who is the indemnitee. *Gartside v Young Men's Christian Ass'n,* 87 Mich App 335; 274 NW2d 58 (1978), *Fireman's Fund American Ins Cos v General Electric Co,* 74 Mich App 318; 253 NW2d 748 (1977). It has also been said of the construction of indemnity contracts that in order to be effective, the terms must be unequivocal. *Hayes v General Motors Corp,* 106 Mich App 188; 308 NW2d 452 (1981). See generally 41 Am Jur 2d, Indemnity, §§ 13-15, pp 697-702.

The findings concerning intent are factual and may not be reversed on appeal unless clearly erroneous. GCR 1963, 517.1. A finding is clearly erroneous where, although there is evidence to support it, the reviewing court considering the record as a whole is left with the definite and firm conviction that a mistake has been committed. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

Although the indemnity clause at issue did not go so far as to explicitly say that the indemnitee

should be held harmless from its own negligence, we are of the opinion that the clause as written should have put any indemnitor reading it on notice that this was its purpose. The clause clearly states that the lessor "shall not be held responsible for *any loss*" and that the "lessee shall indemnify lessor against, and hold lessor harmless from, *any and all* claims, damages * * * including *without limitation* the manufacture, solicitation, delivery, possession, use, operation or return of the equipment * * *". (Emphasis added.)

As the Court held in *Laudano v General Motors Corp,* 34 Conn Supp 684; 388 A2d 842, 845 (1977):

"[T]here cannot be any broader classification than the word 'all'. In 'its ordinary and natural meaning, the word "all" leaves no room for exceptions.' " (Citations omitted.)

That the instant clause was intended to indemnify Mi-Jack from even its own negligence is buttressed by the examples following the phrase "without limitation": manufacture, selection, and delivery. The manufacture, selection, and delivery of the travel lift are all activities that would most probably be attributable to the lessor-indemnitee Mi-Jack and not to the potential lessee-indemnitor. We believe that to construe the clause otherwise would render much of the language employed a nullity, a result the parties surely did not intend. This interpretation is consistent with the rule of construction that an indemnity agreement should be construed so as to give reasonable meaning to all its provisions, a result which is preferable to one that leaves part of the language useless or inexplicable or creates surplusage. *Herchelroth v Mahar,* 36 Wis 2d 140; 153 NW2d 6 (1967).

As in *Vanden Bosch, supra,* we concede that the indemnity clause did not "expressly" state that Mi-Jack would be held harmless from its own negligence. 394 Mich 428. We believe, however, that the clause in the instant case expresses that intent more clearly than did the clause in *Vanden Bosch.* In short, we believe that we would be exalting form over substance to hold, as Ragnar-Benson asks us, that the only language which will shield an indemnitee from its own negligence is language which states that an "indemnitee shall be indemnified for its own negligence". While the suggested language well may be preferable, we believe the difference between the language used and that suggested is largely one of semantics.

Our reading of the lease agreement and consideration of the surrounding circumstances reinforces our conclusion that the trial judge erred. Ragnar-Benson's agent who signed the lease agreement testified that he was aware of the fact that such agreements commonly contain indemnity clauses but that he was not concerned with such details. In fact, he signed the lease without even reading the indemnity provision. It is a basic principle that a party who has not read the contents of a contract before signing it may not claim that his intention was different from that stated in the writing. See *Komraus Plumbing & Heating, Inc v Cadillac Sands Motel, Inc,* 387 Mich 285, 289-291; 195 NW2d 865 (1972).

In the present case, a summary of the evidence of the indemnitor's intent is that (1) it was aware that an indemnity clause was probably contained in the lease, (2) it was not concerned with that fact, and (3) it signed the lease without reading the indemnity provision. The evidence of Ragnar-Benson's intent, therefore, is consistent only with a

willingness to accept the terms of whatever indemnity clause was offered by the lessor.

Concerning the lessor's intent, the trial judge determined that Mi-Jack intended only to shield itself from liability which was caused while the equipment was out of its control but that it did not intend to be protected against its own negligence.

Our previous analysis of the indemnity clause, when coupled with a review of Mi-Jack's testimony, leads us to conclude that the trial court's ruling was clearly erroneous. There was testimony, for example, that Mi-Jack intended the clause to cover any liability which arose when the machine was being used, whether or not the use caused the injury. In addition, Mi-Jack's agent testified that whether the liability was attributable to the manufacturer's fault, the customer's fault, a third party's fault, or its own fault it was Mi-Jack's intent that the indemnity agreement would apply.

To summarize, we conclude that the language of the clause supports the inclusion of Mi-Jack's negligence within the broad, all-inclusive language of the indemnity agreement. See *Jacksonville Terminal Co v Railway Express Agency, Inc,* 296 F2d 256 (CA 5, 1962), *Laudano, supra, Levine, supra.* Further, to the extent that the intent of the parties is relevant, it is clear that Ragnar-Benson intended to accept whatever language was offered by the lessor and that Mi-Jack's intent was to be held harmless from even its own negligence.

Having concluded that the trial judge erred in not giving effect to the indemnity clause, we must decide whether Ragnar-Benson is entitled to a hearing concerning the reasonableness of the settlement between Mi-Jack and the principal plaintiffs.

In *Ford v Clark Equipment Co,* 87 Mich App

270, 276-278; 274 NW2d 33 (1978), this Court held that in order to establish a claim for indemnity only *potential* liability need be shown by an indemnitee who tenders the defense and a notice of settlement to an indemnitor prior to settling a claim. Basing its decision on the sound public policy of encouraging settlements, the *Ford* Court held that the indemnitee is required to show that the settlement was reasonable and that reasonableness, in turn, depends on the amount paid in settlement in light of the risk of exposure, which the Court defined as the probable amount of judgment if the original plaintiff were to prevail at trial.

The *Ford* case suggests that the issue of reasonableness is subject to proof. The present action began as a jury trial, but it was aborted when settlements were reached. Based upon the evidence which Pritts had produced, the trial judge ruled that Mi-Jack was potentially liable to Pritts and that the settlement was reasonable.

Ragnar-Benson felt that the amount of the settlement was too high and offered to prove that Pritts likely would have lost the job which he held at the time he was injured. It appears, therefore, that the only objection was to the amount of the settlement and not to the probability of Mi-Jack's liability. Although the court may have erred in not considering the proffered evidence, on this record we deem any error to have been harmless. The accident at issue was very serious, causing plaintiff to lose one leg completely while incurring serious and permanent injury to the other. We cannot say that the court erred in concluding that the amount of the settlement was reasonable in light of the injuries sustained, especially since it heard the proofs adduced by plaintiffs at trial. See

*Pippen v Denison Division of Abex Corp,* 66 Mich App 664; 239 NW2d 704 (1976).

Ragnar-Benson's next contention is that the indemnity provision violates MCL 691.991; MSA 26.1146(1) which provides:

"A covenant, promise, agreement or understanding in, *or in connection with or collateral to,* a contract *or agreement relative to the construction,* alteration, repair or maintenance of a building, structure, appurtenance and appliance, including moving, demolition and excavation connected therewith, purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee or indemnitee, his agents or employees, is against public policy and is void and unenforceable." (Emphasis added.)

This statute embodies the public policy that, in the building and construction industry, provisions in an agreement which seek to indemnify an indemnitee from recovering for his sole negligence are void. See *Robertson v Swindell-Dressler Co,* 82 Mich App 382; 267 NW2d 131 (1978), *lv den* 403 Mich 812 (1978). The question before us is whether or not contracts for the sale or lease of equipment to contractors are within the statute. Ragnar-Benson has not cited, nor can we find, any cases in which the statute has been held to apply to equipment suppliers such as Mi-Jack.

Although it could be argued that the instant lease was "relative to" construction because the lift truck would be used in construction, we refuse to extend the statute that far. The language of the statute suggests that it is addressed to construction contracts which call for the construction or repair of a building. Had the drafters of the statute desired, they specifically could have included

suppliers of those engaged in construction within the ambit of the statute. They failed to do so. Since the statute is an exception to the general rule that indemnity contracts purporting to absolve the indemnitee from liability for his own negligence are not against public policy, 13 Callaghan's Michigan Civil Jurisprudence, Indemnity and Contribution, § 13, p 212, we believe that the statute should be construed narrowly and that it is inapplicable in the present context.

We have reviewed Ragnar-Benson's evidentiary claim and find it to be without merit. The contention is that the trial judge erred by excluding evidence of a purchase order which Ragnar-Benson claimed to have returned with the signed lease agreement and which purportedly contained an indemnity clause in favor of Ragnar-Benson.

Our first observation in this regard is that the Mi-Jack lease agreement was admitted during trial without objection. The lease was signed by representatives of both Mi-Jack and Ragnar-Benson on June 20, 1973. Ragnar-Benson's purchase order, which was signed only by Ragnar-Benson, was dated November 20, 1973.

Ragnar-Benson's contentions rest entirely on the application of MCL 440.2207; MSA 19.2207 which governs those cases in which an offeree's acceptance or confirmation of an offer contains additional or different terms from those offered or agreed upon. Initially, we note that UCC § 2-207 is *potentially* applicable here since, although the contract at issue is labeled a lease, a clause in the contract provides that "at the end of 33 months rental, the machine becomes the property of Ragnar-Benson Corp., provided all 33 payments have been made". Since the contract contemplates the passing of title from the "seller" to the "buyer" for

a price, MCL 440.2106; MSA 19.2106, the contract may be viewed as a sale.

While potentially applicable, we are convinced § 2-207 does not apply in the instant case. That section does not permit one party to send a written confirmation (or purchase order form) which varies the terms of an original written agreement which has been signed by both parties. See *American Parts Co, Inc v American Arbitration Ass'n,* 8 Mich App 156, 174; 154 NW2d 5 (1967). We agree with Mi-Jack's contention that the fact that Ragnar-Benson, at a later date, produced an unsigned purchase order cannot change the original agreement made by the parties.

To the extent that Ragnar-Benson is arguing that its purchase order was returned to Mi-Jack simultaneously with the lease and not after, the court did not err in excluding the proffered evidence since its admission would have violated the parol evidence rule. See *Union Oil Co of California v Newton,* 397 Mich 486, 488; 245 NW2d 11 (1976), *Michigan National Bank of Detroit v Holland-Dozier-Holland Sound Studios,* 73 Mich App 12, 14-17; 250 NW2d 532 (1976). Because the lease in the present case contains both parties' signatures, and because both signatures bear the date of June 20, 1973, the judge found that the lease embodied the full and complete agreement of the parties and that the purchase order was not part of the agreement. Since the proffered evidence contained a date inconsistent with and contrary to the date written on the lease, it properly was ruled inadmissible.

Ragnar-Benson's final claim is that if it is contractually obligated to indemnify Mi-Jack, as we have ruled it is, that it should be entitled to common-law indemnification from Mi-Jack. This

claim finds no support in law or logic. In *Minster Machine Co v Diamond Stamping Co,* 72 Mich App 58, 61-62; 248 NW2d 676 (1976), this Court stated that common-law indemnification rests upon the equitable principle of restitution. The party seeking indemnification must be without fault and its liability must arise solely by operation of law. Liability imposed by a contract of indemnification does not arise by operation of law. A party subject to liability based upon a contract of indemnity, therefore, cannot seek common-law indemnity because its liability does not arise by operation of law.

Affirmed in part and reversed in part. Costs to appellant.