803 F.2d 718
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thomas BEAVER and Melanie Beaver, Plaintiffs-Appellees,
v.
FIGGIE INTERNATIONAL CORPORATION, Defendant/Third-Party
Plaintiff-Appellant,
v.
The DETROIT BOARD OF EDUCATION, Third-Party Defendant-Appellee.
 Nos. 83-1829, 84-1441.
 United States Court of Appeals, Sixth Circuit.
 Sept. 15, 1986.
 
 Before LIVELY, Chief Judge, and MERRITT and NELSON, Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 The Safway Steel Products Division of Figgie International Corporation supplied scaffolding planks to the Detroit Board of Education under a rental agreement that required the Board to hold Figgie harmless against claims arising out of use of the planks. The agreement obligated the Board to protect Safway/Figgie "even against the consequences of Safway's own negligence...." Thomas Beaver, a carpenter employed by the Detroit Board of Education, brought a diversity action against Figgie, contending that he had been injured in a fall when one of the Safway scaffolding planks broke underneath him as he was replacing a window. Figgie impleaded the Board of Education as a third-party defendant, asserting a claim against it for indemnification, but the trial court dismissed the Board prior to trial on a motion for summary judgment. A jury found that Mr. Beaver had been injured as a result of Figgie's negligence, and judgment was entered accordingly. Figgie has appealed. We shall affirm the judgment entered on the verdict in favor of Mr. Beaver and reverse the summary judgment in favor of the Board of Education.
 
 
 2
 * The most significant issue presented is whether Figgie does or does not have an indemnification claim against the Board of Education; we address that question first.
 
 
 3
 The terms and conditions of the rental agreement included a paragraph that read as follows:
 
 
 4
 "The LESSEE [Board of Education] shall at all times and at his own expense keep the leased equipment in good, safe and efficient working order, repair and condition and shall not permit anyone to injure, deface or remove it or any part thereof. LESSEE agrees to erect, maintain and use said equipment in a safe and proper manner and in conformity with all laws and ordinances pertaining thereto and in accordance with COMPANY safety rules and regulations. [Twenty-three numbered "Safety Regulations" were set forth elsewhere in the rental agreement.] Unless otherwise specifically agreed to in writing and said written agreement attached hereto as a rider, the COMPANY shall have no responsibility, direction or control over the manner of erection, maintenance, use or operation of said equipment by the LESSEE, and the LESSEE assumes all responsibility for claims asserted by any person growing out of the erection and maintenance, use or possession of said equipment, and agrees to hold the COMPANY harmless from all such claims. LESSEE agrees that use of the leased equipment shall be construed as an absolute acknowledgment by LESSEE that when delivered to LESSEE by COMPANY the equipment was in good order and repair, and was properly erected and was in all respects adequate, sufficient and proper for the purposes for which it was intended. By this provision, it is clearly and unequivocally intended, because of the difficulty of determining correctly who may have been negligent in any particular case that the LESSEE assumes and agrees to protect SAFWAY even against the consequences of SAFWAY'S own negligence and to indemnify SAFWAY against and hold SAFWAY harmless from any claims by anybody based on SAFWAY'S negligence."
 
 
 5
 Figgie's third-party complaint sought indemnification both on the basis of the quoted language and on the ground that the Board had violated a duty to adhere to the safety regulations in using the plank. We need not consider the latter claim because of our conclusion that the indemnification provision must be enforced in accordance with its terms.
 
 
 6
 In moving for summary judgment the Board of Education contended that Figgie's claim was barred both by the Michigan Workers' Compensation Act and by M.C.L.A. Sec. 691.991, which declares certain building industry indemnification contracts void and unenforceable. The Board's reliance on the Workers' Compensation Act is clearly misplaced. By its terms, that act only insulates the employer from liability to persons "to whom a claim accrues by reason of the injury to or death of the employee...." M.C.L.A. Sec. 418.131. Husted v. Consumers Power Co., 376 Mich. 41, 135 N.W.2d 370 (1965), held that this language bars a third-party plaintiff's action for contribution against a joint tortfeasor-employer, but it is well settled that the employer immunity provision does not protect an employer against a third-party claim for indemnity, as opposed to contribution. Dale v. Whiteman, 388 Mich. 698, 202 N.W.2d 797 (1972); Venters v. Michigan Gas Utilities Co., 493 F.Supp. 345 (W.D.Mich.1980).
 
 
 7
 The other statute on which the Board relied, M.C.L.A. Sec. 691.991, provides as follows:
 
 
 8
 "A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure appurtenance and appliance, including moving, demolition and excavating connected therewith, purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee or indemnitee, his agents or employees, is against public policy and is void and unenforceable."
 
 
 9
 In granting the Board's motion for summary judgment, the trial court held this statute "clearly applicable to the facts of this situation," the case being "one of a carpenter who worked for the Board of Education attempting to repair a Board of Education structure on a scaffold which the Board has leased from [Figgie.] " However, the trial court's attention had not been invited to Pritts v. J.I. Case Co., 108 Mich.App. 22, 310 N.W.2d 261 (1981), where a Michigan Court of Appeals held that contracts for the sale or lease of equipment to contractors are not within the statute. In the words of the Michigan Court,
 
 
 10
 "The language of the statute suggests that it is addressed to construction contracts which call for the construction or repair of a building. Had the drafters of the statute desired, they specifically could have included suppliers of those engaged in construction within the ambit of the statute. They failed to do so. Since the statute is an exception to the general rule that indemnity contracts purporting to absolve the indemnitee from liability for his own negligence are not against public policy [citation omitted], we believe that the statute should be construed narrowly and that it is inapplicable in the present context." 108 Mich.App. at 34-35, 310 N.W.2d at 267.
 
 
 11
 Federal jurisdiction over the case at bar rests solely on diversity of citizenship, and we must apply Michigan law under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). The Board of Education has not cited any case suggesting that Pritts does not represent the law of Michigan, and we are aware of no such case. The Board does argue that Pritts can be distinguished, but the grounds suggested for distinguishing it are not persuasive.
 
 
 12
 "First," the Board argues, "the equipment lease in Pritts did not expressly state that the 'indemnitee shall be indemnified for its own negligence.' " But the fact that Figgie's rental agreement did expressly provide for indemnification with respect to Figgies own negligence helps Figgie, not the Board; that the terms of the instant rental agreement are clearly applicable is hardly an argument against enforcing the agreement in accordance with its terms.
 
 
 13
 Secondly, the Board argues, the equipment lease in Pritts provided that the lessee would become the owner of the leased equipment if the rental payments were kept up for a period of 33 months. The fact that the Pritts rental might have ripened into a sale at some future point is immaterial, however; the issue before the Pritts court, in the court's view, was "whether or not contracts for the sale or lease of equipment to contractors are within the statute." 108 Mich.App. at 34, 310 N.W.2d at 267 (emphasis supplied.)
 
 
 14
 Thirdly, the Board argues that the equipment leased in Pritts, a "travel lift," was the sort of equipment that "probably could be put to uses other than construction," unlike the scaffolding plank involved here. But Pritts held that the Michigan statute is limited to "construction contracts which call for the construction or repair of a building" (108 Mich.App. at 34, 310 N.W.2d at 267), and although the Board of Education doubtless entered into the rental agreement in the case at bar because it wanted to use the rented equipment in repairing a building, the agreement clearly does not "call for" such repair; it is an agreement to lease, not an agreement to repair. A fair reading of Pritts does not suggest that the Michigan court would have reached a different result if the leased item had been a scaffolding plank rather than a travel lift.
 
 II
 
 15
 Figgie contends that the court committed prejudicial error in refusing to give two special jury instructions requested by Figgie. We find no such error.
 
 
 16
 The first requested instruction would have told the jury that "a lessor owes no duty to warn or instruct expert users of the product." The record makes it abundantly clear, however, that the case was not submitted to the jury on a failure to warn theory. In a colloquy with the court on the motion for a directed verdict made by Figgie after the plaintiff had rested, counsel for the plaintiff conceded that there had been a failure of proof on the failure to warn allegations of the complaint; plaintiff's counsel expressly withdrew the claim that Figgie had been negligent in this regard. The record does not contain a transcript of the charge actually given by the court, but the failure to warn claim having been withdrawn, there is no reason to suspose that the jury was told it could find Figgie negligent on that basis. If breach of a duty to warn was not an issue in the case, there was no reason to tell the jury that "expert users" are not entitled to warning.
 
 
 17
 The other requested instruction is described by Figgie as "a composite of the Michigan Standard Jury Instructions Civil 2nd Ed. Secs. 25.32 and 25.41." This charge would have instructed the jury on five elements that the plaintiff has the burden of proving in a "products liability" case, without differentiating between negligence and breach of warranty, and it would have instructed the jury on various aspects of the comparative negligence doctrine.
 
 
 18
 There is no reason to suppose that the charge actually given by the court did not adequately instruct the jury on comparative negligence. In fact, the jury found that Mr. Beaver had been negligent and that 33% of the "total combined negligence" of both parties had been attributable to him. The court reduced the total damages assessed by the jury accordingly.
 
 
 19
 Neither do we believe that Figgie was prejudiced in any way by the court's failure to give the first part of the requested instruction. Although we have not been favored with a transcript of the charge actually given, Figgie seems to concede that the court did give Michigan's standard jury instructions on negligence and breach of warranty; the argument, as we understand it, is that the court should not have differentiated between the two theories of liability. Figgie apparently took no exception to the verdict form, however, and the verdict form required separate findings on negligence and breach of warranty. As long as the jury was being asked to make separate determinations as to negligence and breach of warranty, we are at a loss to understand how the court could be thought to have erred in giving separate instructions on those issues.
 
 
 20
 Figgie maintains that "our federal common law indicates there is one cause of action under a products liability case and that is a 'hybrid' products liability claim which includes negligence and warranty there being no discernable distinction between the two." Whatever relevance this proposition might have had before Swift v. Tyson, 41 U.S. (16 Pet.) 1 (1842) was overruled by Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), it has none now. This is a diversity case, and it is well settled that the substance of instructions in such cases is controlled by the applicable state law. Batesole v. Stratford, 505 F.2d 804, 807 (6th Cir.1974). We are aware of no Michigan authority holding that it is reversible error for a trial court to give the Michigan standard jury instruction on negligence in a product liability case, and in any event the trial record does not show that Figgie took exception to the negligence instruction. Figgie could hardly have been prejudiced by the breach of warranty instruction, because the jury found there was no breach of warranty.
 
 III
 
 21
 Figgie's final contention is that it was entitled to judgment as a matter of law because "the plaintiff failed to establish a prima facie case presenting evidence from which it might legitimately be inferred that the subject plank was one leased by the defendant and was in fact defective."
 
 
 22
 Although the Board of Education had some planks that were not leased from Figgie, the Board's planks were different in appearance and were stored in a location other than that from which the plank that broke was taken. The record contains ample evidence that the plank which causes Mr. Beaver's injury was, in fact, a Safway plank.
 
 
 23
 The offending plank disappeared after the accident, and there was no evidence of precisely why it broke. Expert testimony was presented, however, from which the jury could properly have inferred that a defect-free plank two inches thick, ten inches wide, and supported as this one was should not have broken under the weight to which this plank was subjected. We are not persuaded that the trial court should have taken the case from the jury.
 
 
 24
 For the reasons stated, the judgment in favor plaintiff Beaver is AFFIRMED. The summary judgment in favor of the Detroit Board of Education is REVERSED, and the cause is REMANDED for further proceedings as to Figgie's third-party claim against the Board.