849 F.2d 1472
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thomas BEAVER, et al., Plaintiffs,
v.
FIGGIE INTERNATIONAL CORPORATION, Defendant and Third Party
Plaintiff-Appellee,
the Detroit Board of Education, Third Party Defendant-Appellant.
 No. 87-1362.
 United States Court of Appeals, Sixth Circuit.
 June 24, 1988.
 
 Before KRUPANSKY and DAVID A. NELSON, Circuit Judges, and JAMES D. TODD, District Judge.*
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This case--which has been here before (Opinion, Nos. 83-1829/84-1441 (6th Cir. Sept. 15, 1986))--began as a personal injury action brought against Figgie International Corporation by a carpenter who was injured when a defective scaffolding plank on which he was standing broke beneath him. Figgie had supplied the plank to the carpenter's employer, the Detroit Board of Education, under a rental agreement that required the Board of Education to hold Figgie harmless from any personal injury claims growing out of the use of the rented plank, including claims based on Figgie's own negligence.
 
 
 2
 Impleading the Board of Education as a third-party defendant, Figgie claimed a right of indemnification under the rental agreement. After filing an answer in which it asserted a number of affirmative defenses, including the defense that "the relevant contract is unconscionable," the Board obtained a summary judgment in its favor on the narrow ground that Figgie's indemnification claim was barred by Sec. 691.991 of the Michigan Compiled Laws. (Where that statute applies, it invalidates, as against public policy, agreements to indemnify promisees against the consequences of their own sole negligence.)
 
 
 3
 We reversed the summary judgment on the strength of Pritts v. J.I. Case Co., 108 Mich.App. 22, 310 N.W.2d 261 (1981), and remanded the case "for further proceedings as to Figgie's third-party claim against the Board." Opinion at 7. Figgie then moved in the district court for summary judgment in the amount the original plaintiff had recovered in the trial of his case, plus Figgie's costs of defense, including attorney fees. Although there was no occasion for our opinion in the initial appeal to go beyond the question whether enforcement of the rental agreement's indemnification provision was barred by M.C.L. Sec. 691.991, our opinion nonetheless said, at one point, that "the indemnification provision must be enforced in accordance with its terms." Opinion at 2. In its subsequent motion for summary judgment, Figgie cited that language in urging the district court to dispose of the case summarily.
 
 
 4
 The Board of Education countered Figgie's motion with a summary judgment motion of its own, predicated on the common law defense of unconscionability--a defense the board understood had not yet been ruled on. Figgie filed a response arguing that the issue of unconscionability was no longer open, this court having said that the indemnity provision would have to be enforced with its terms.
 
 
 5
 On February 2, 1987, the district court heard oral argument on both summary judgment motions. Explaining that "the basis of my motion ... is the ruling of the appellate tribunal," counsel for Figgie submitted that it was "too late" for the district court to address the merits of the unconscionability question. Counsel for the Board responded that "this issue had never been addressed, nor was it addressed before the Court of Appeals," and counsel asked for "the opportunity to argue the unconscionability issue." The district court invited counsel to proceed--briefly--with such an argument. Counsel did so, suggesting that the indemnity clause was both "procedurally" and "substantively" unconscionable within the meaning of Johnson v. Mobil Oil Corp., 415 F.Supp. 264 (E.D.Mich.1976). In this connection counsel referred to various factual representations contained in an affidavit of Mr. Warren Nunlee-Bey, the Board of Education carpenter who had signed Figgie's rental agreement.
 
 
 6
 At the conclusion of both arguments, the district court, speaking to Figgie's lawyer, said "[t]he Court will grant your motion, Mr. Morbach, for the reasons you have stated on the record, and also on the basis of the opinion of the Sixth Circuit Court of Appeals." An order granting Figgie's summary judgment motion and denying the Board's was filed on February 17, 1987.
 
 
 7
 The district court subsequently entered an order extending to March 9, 1987, the time within which the Board of Education could move for reconsideration. The Board filed such a motion on that date, urging that "as a result of the direct application of the ruling of the United States Court of Appeals for the Sixth Circuit ... the Third Party Defendant has been denied a for[u]m on the issue of the unconscionability of the contract at issue." The brief accompanying the Board's motion for reconsideration pointed out that
 
 
 8
 "[T]he Court of Appeals in its opinion found that the Third Party Plaintiff Figgie was not a business entity which fell within the class of businesses covered by [M.C.L. Sec. 691.991].
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 "The issue whether or not the contract at issue was an unconscionable contract based on common law principles was not appealed or argued at the Sixth Circuit.
 
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 "[T]he Third Party Defendant is being assessed a judgment without having presented its primary defense nor, does the Third Party Defendant have an opportunity for appeal absent a specific ruling on the issue of common law unconscionability of the contract at issue."
 
 
 15
 On March 12, 1987, the district court entered an order disposing of the Board's motion for reconsideration on the following ground:
 
 
 16
 "Contrary to Movant's assertion, it was provided with an opportunity to present its primary defense of unconscionability. This issue was fully briefed by both parties in their cross-motions for summary judgment and was ruled upon by the Court by reasonable implication."
 
 
 17
 The Board's motion for reconsideration was denied, and this appeal followed.
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 But for the district court's ruling on the motion for reconsideration, we would be constrained to vacate the judgment and to remand the case with instructions to decide the unconscionability issue on its merits. The Board of Education did not waive its other affirmative defenses when it moved for summary judgment on the basis of M.C.L. Sec. 691.991, the unconscionability issue was not resolved by the district court when it granted summary judgment on the ground that the statute was applicable, and the issue was not presented to us for decision when the case was heard on Figgie's appeal. The question before us at that time was whether enforcement of the indemnity provision was barred by M.C.L. Sec. 691.991, and we ought to have expressed the holding in those terms. By saying we had concluded that the indemnity provision must be enforced, we may have given the district court and counsel to understand that our ruling was broader than would have been appropriate. And the transcript of the hearing held by the district court on the subsequent cross-motions for summary judgment cannot be said to leave the reader with a clear conviction that the district court's grant of Figgie's motion for summary judgment was based on anything other than our statement that the indemnity provision must be enforced in accordance with its terms.
 
 
 21
 The question of whether the Board of Education was ever truly given its day in court on the unconscionability issue was resolved, however, by the district court's ruling on the motion for reconsideration. Whether or not Figgie ever addressed the unconscionability issue head-on, the Board of Education clearly did so. The Board affirmatively asked, in its summary judgment motion, for a ruling on the merits of its unconscionability defense. The Board put into the record all the facts it wished to present on the issue of unconscionability, it briefed the issue, and it presented oral argument thereon. Whatever doubt may have existed as to whether the district court actually ruled on the merits of the unconscionability defense was resolved by the order denying reconsideration; the Court told us in that order that the issue "was ruled upon by the Court by reasonable implication." We must now decide, therefore, whether the district court's ruling was wrong. We are not persuaded it was, and we shall affirm the judgment.
 
 
 22
 * * *
 
 
 23
 * * *
 
 
 24
 Although the agreement with which we are concerned here is not covered by Michigan's version of the Uniform Commercial Code, the provisions of the code may be consulted in determining the content of the common law of Michigan with respect to unconscionability. "The equitable doctrine of unconscionability has a long history in Michigan ... The doctrine was adopted by [the Michigan] Legislature in the Uniform Commercial Code, M.C.L.A. Sec. 440.2302, M.S.A. Sec. 19.2302, and continues to apply to contracts outside the scope of the Uniform Commercial Code as well." Stenke v. Masland Development Co., Inc., 152 Mich.App. 562, 572; 394 N.W.2d 418, 423 (1986); cf. Northwest Acceptance Corporation v. Almont Gravel, Inc., 162 Mich.App. 294, 305, 412 N.W.2d 719, 724 (1987), Johnson, supra, 415 F.Supp. at 266-8.
 
 
 25
 The UCC makes the following pronouncements on unconscionability:
 
 
 26
 "(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
 
 
 27
 "(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." M.C.L.A. Sec. 440.2302.
 
 
 28
 The Practice Commentary to M.C.L.A. Sec. 440.2302 explains that "unconscionability is a question of law for the court to decide," and adds that "[u]nconscionable contracts can be declared unenforceable either in whole or in part at the discretion of the court." See also Almont Gravel, Inc., supra, 162 Mich.App. at 300; 412 N.W.2d at 722. Having reviewed the evidence presented by the Board in this case, we do not believe that the district court abused its discretion in holding that the Board failed to prove unconscionability.
 
 
 29
 To void a contractual provision as unconscionable, under Michigan law, a court must find both "substantive" and "procedural" unconscionability. Johnson, supra, 415 F.Supp. at 268; Almont Gravel, Inc., supra, 162 Mich.App. at 302; 412 N.W.2d at 723. "Substantive" unconscionability arises where "the contract terms [are] unreasonably favorable" to the party seeking to enforce them. Almont Gravel, Inc., 162 Mich.App. at 305, 412 N.W.2d at 724.
 
 
 30
 One reason why the instant indemnification provision is not "unreasonably favorable" to Figgie is suggested by the indemnity provision itself: where rented equipment has been in the possession of the lessee for a protracted period of time, as the lease points out, the lessor has no way of knowing or controlling what might have been done to it during that time--and the task of determining who is actually at fault for an untoward event involving the equipment will frequently be difficult. Automatic allocation of responsibility to the lessee may save administrative, investigative, and legal costs, which could well result in lower rental costs than those that would be charged otherwise. And if a lessee who obtains equipment on these terms does not wish to be a self insurer, there is no reason--at least the Board has suggested no reason--why the lessee cannot obtain commercial insurance coverage. We see nothing unconscionable about the substance of the provision at issue here.
 
 
 31
 Neither is the provision "procedurally" unconscionable. A contract is not procedurally unconscionable, under Michigan law, if "at the time of contracting each party has a realistic alternative to acceptance of the terms offered." Almont Gravel, 162 Mich.App. at 304, 412 N.W.2d at 723 (quoting Allen v. Michigan Bell Telephone Company, 18 Mich.App. 632, 637 (1969) lv. den. 383 Mich. 804 (1970)). The Board of Education failed to show that it lacked any realistic alternative to renting planks from Figgie on Figgie's terms. The evidence showed that some of the planks used by the Board were owned and maintained by it, and we have no reason to suppose that the Board could not have bought all the planks it needed, or rented them elsewhere, as opposed to renting from Figgie.
 
 
 32
 Although Mr. Nunlee-Bey swore "[t]hat at the time he signed the document it was his intent to sign only for the delivery of the scaffolding and materials" and "[t]hat the fact that he was signing for the actual 'Lease' of the scaffolding was not explained to him by any representative of Safway/Figgie," deposition testimony of the injured carpenter indicated that the Board of Education had been renting scaffolding planks from Figgie for fifteen years. There was no showing that Figgie ever changed the terms of its rental agreements, there was no showing that Figgie prevented Mr. Nunlee-Bey or anyone else from reading the agreements, and there was no showing that it was commercially unreasonable for a lessor to ask a lessee to sign a rental agreement before turning over possession of rental property. Mr. Nunlee-Bey stated that he signed "as a matter of routine." A principal whose agent is allowed routinely to sign ordinary legal documents is in no position to disavow the documents if it seems convenient later to do so. And the mere fact that a contract happens to be "standardized and preprinted does not make it unenforceable as a contract of adhesion." St. Paul Fire & Marine Insurance Company v. Guardian Alarm Company of Michigan, 115 Mich.App. 278, 284, 320 N.W.2d 244, 247 (1982).
 
 
 33
 The Board attempts to invoke the provisions of the Michigan Consumer Protection Act, M.C.L.A. Secs. 445.901 et seq., but that statute does not apply to transactions between two merchants. The acts specified in M.C.L.A. Sec. 445.903 are not "unconscionable" unless committed "in the conduct of trade or commerce," defined as "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes." M.C.L.A. Sec. 445.902(d). Figgie did not lease the scaffolding planks to the Board for "personal, family, or household purposes."
 
 
 34
 * * *
 
 
 35
 * * *
 
 
 36
 The Board contends, finally, that it has three valid affirmative defenses in addition to unconscionability. The Board argues first that it is not bound by the indemnity provision because the rental agreement was not endorsed by the Board's secretary as required by M.C.L.A. Sec. 380.434(1). That statute reads as follows:
 
 
 37
 "Before a contract entered into by the first class school district board for the purchase of real estate or the erection, remodeling, or repairing of a building is binding on the board, the secretary shall endorse on the contract that the money proposed to be expended under the contract is actually in the treasury or that the money has been appropriated. A contract submitted shall not be certified by the secretary until all contracts for the completed work covered by the appropriation are submitted, and a warrant shall not be drawn on the account of a contract not containing the certificate." M.C.L.A. Sec. 380.434(1).
 
 
 38
 The rental agreement did not constitute a contract for the purchase of real estate or the erection, remodeling or repairing of a building, and the statute therefore has no application here.
 
 
 39
 Secondly, the Board argues that "as a public body corporate [it] may not unknowingly be bound by a contract by which it surrenders its privileges and immunities. If the contract at issue is not unconscionable then by the act of its workman, the Board of Education lost its right to maintain its immunity from tort liability conferred by MSA 3.996 (107) et seq. M.C.L.A. 691.1407." Under Michigan law, however, "governmental immunity is not a defense to a claim against the State for contractual liability." Zynda v. Michigan Aeronautics Commission, 372 Mich. 285, 287, 125 N.W.2d 858, 860 (1964). The claim on which Figgie prevailed sounds in contract, not in tort, and if the Board chose to rent scaffolding planks over a period of years without reading its rental agreements, that is hardly Figgie's fault.
 
 
 40
 Thirdly, the Board argues that as a matter of public policy an indemnitor may not be held liable to a negligent indemnitee unless the indemnitor was also negligent. That may be the policy in the case of the construction and repair contracts that are subject to M.C.L.A. Sec. 691.991, but "this policy does not preclude clauses providing for indemnification for one's sole negligence in other areas, such as in a lease or bailment situation." Peeples v. City of Detroit, 99 Mich.App. 285, 295, 297 N.W.2d 839, 843 (1980). As the court stated in Pritts, M.C.L.A. Sec. 691.991 "is an exception to the general rule that indemnity contracts purporting to absolve the indemnitee from liability for his own negligence are not against public policy." 108 Mich.App. at 35, 310 N.W.2d at 267.
 
 
 41
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 James D. Todd, United States District Court for the Western District of Tennessee, sitting by designation